**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PARDALIS TECHNOLOGY LICENSING, L.L.C. | § § § § | |
| v. | § § | CASE NO. 2:22-CV-452-JRG-RSP |
| INTERNATIONAL BUSINESS MACHINES CORPORATION | § § § § § | |

**CLAIM CONSTRUCTION ORDER**

On March 8, 2024, the Court held a hearing to determine the proper construction of disputed terms in United States Patents No. 6,671,696, 7,136,869, 7,949,668, 8,307,000, 9,690,765, 10,409,902, and 11,126,790. Before the Court is the Opening Claim Construction Brief (Dkt. No. 45) filed by Plaintiff Pardalis Technology Licensing, L.L.C. ("Plaintiff" or "Pardalis"). Also before the Court are the Responsive Claim Construction Brief (Dkt. No. 46) filed by Defendant International Business Machines Corporation ("Defendant" or "IBM"), Plaintiff's Claim Construction Reply Brief (Dkt. No. 48), the parties' December 5, 2023 Joint Claim Construction and Pre-Hearing Statement (Dkt. No. 38), and the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 56).

Having reviewed the arguments made by the parties at the hearing and in their claim construction briefing, having considered the intrinsic evidence, and having made subsidiary factual findings about the extrinsic evidence, the Court hereby issues this Claim Construction Order. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

Table of Contents

I.   BACKGROUND.........................................................................................................................3

II.  LEGAL PRINCIPLES ............................................................................................................4

III. AGREED TERMS.....................................................................................................................7

IV.  DISPUTED TERMS..................................................................................................................8

   A.  "information object" and "informational object" (Term No. 1) ...........................................8

   B.  "data element" and "data elements" (Term No. 2) ............................................................13

   C.  "immutable" (Term No. 3)...................................................................................................16

   D.  "authorized" (Term No. 6)...................................................................................................19

   E.  "authenticating" and "authenticated" (Term No. 7)............................................................22

   F.  "said data elements and [said] informational objects" (Term No. 16) ...............................25

   G.  "said data elements" and "said plurality of data elements" (Term No. 22)........................26

   H.  "[the/said] unique identifiers that correspond to a selected set of [said/a/the] [plurality of] data elements" (Term No. 25)........................................................................................27

   I.  "said first and said second means for maintaining" (Term No. 20) ....................................28

   J.  "The common point authoring system of claim 9 further comprising enabling an authorized accessing member to retrieve a selected informational object" (Term No. 28) ...........................................................................................................................................29

   K.  "The common point authoring system of claim 14 wherein said step of enabling comprises: maintaining . . . a set of data that defines an informational object . . . ." (Term No. 29) .................................................................................................................................32

   L.  "wherein [said/the] authorized authoring member creates [a data element / an informational object]" (Term Nos. 26, 27, 30, 31) .............................................................34

   M.  "a copy process for creating a copy of the immutable informational object" (Term No. 32) .................................................................................................................................36

   N.  "mapping associating the unique identifier" (Term No. 37)................................................38

   O.  "means for enabling" (Term Nos. 40, 50, 55(a), 61, 70(a)).................................................40

   P.  "wherein said authoring means incorporates . . ." (Term No. 62).......................................49

   Q.  "means for authenticating said at least one draft data element . . ." (Term No. 64)...........50

   R.  "authenticating means for enabling an authorized individual to authenticate said draft [data element / informational object]" (Term Nos. 56, 63) .................................................52

   S.  "means for comparing content . . . with a set of predetermined rules" (Term No. 51) .......56

   T.  "means for assigning a unique identifier" (Term No. 47)....................................................58

   U.  "means for converting" (Term Nos. 41, 58(a), 59, 65, 68)..................................................60

   V.  "means . . . for registering said at least one of said draft data element and said informational object" (Term No. 52).....................................................................................69

   W.  "means for writing" (Term Nos. 42, 54, 60, 69).................................................................71

X.   "means for storing . . ." and "means for maintaining" (Term Nos. 49, 67(a)) ................... 79

Y.   "means for enabling an authorized accessing member to retrieve a selected informational object" (Term No. 66)............................................................................................... 85

Z.   "means for updating" (Term No. 53) ................................................................ 87

AA.  "authoring server" (Term Nos. 55(b), 58(b), 70(b), 72) and "authentication server" (Term Nos. 57(b), 71) ...................................................................................... 91

BB.  Dependent Method Claim 15 of the '869 Patent (Term 67(b)) .................................... 101

**V.  CONCLUSION**......................................................................................................... **102**

**APPENDIX A** ............................................................................................................ **103**

## I.  BACKGROUND

Plaintiff alleges infringement of United States Patents No. 6,671,696 ("the '696 Patent"), 7,136,869 ("the '869 Patent"), 7,949,668 ("the '668 Patent"), 8,307,000 ("the '000 Patent"), 9,690,765 ("the '765 Patent"), 10,409,902 ("the '902 Patent"), and 11,126,790 ("the '790 Patent") (Dkt. No. 45, Exs. A–G).

The '696 Patent, titled "Informational Object Authoring and Distribution System," issued on December 30, 2003, and bears a filing date of August 20, 2001.  The Abstract of the '696 Patent states:

> The informational object authoring and distribution system functions to provide Value-Added Material Safety Data Sheets via the use of a centralized repository of uniquely identified, immutable Material Safety Data Sheets. This system automates the authoring, maintenance and distribution of the Value-Added Material Safety Data Sheets by using an Internet-based paradigm and a centralized repository of uniquely-identified, immutable data elements. The informational object authoring and distribution system provides a set of software modules that the manufacturers can use to author, maintain and distribute Material Safety Data Sheets and their customers, as members of the system of Value-Added Material Safety Data Sheets, can use to retrieve, maintain and distribute the Material Safety Data Sheets. The system's interconnectivity allows for the use of an Internet-based paradigm for the purchase and sale among members of the system of Value-Added Material Safety Data Sheets as commodities, and for reducing the burden costs among members of compliance with government regulations. In addition, the informational object authoring and distribution system can provide value-added services by providing

advertising of services and products facilitating the interconnection of the manufacturers and manufacturer's customers with other members of the system of ValueAdded Material Safety Data Sheets who are vendors, and who provide services and products related to the information and instructions contained in Value-Added Material Safety Data Sheets.

The '869 Patent, titled "Common Point Authoring System for Tracking and Authenticating Objects in a Distribution Chain," issued on November 14, 2006, and resulted from a continuation-in-part of the '696 Patent. The Abstract of the '869 Patent states:

> The Common Point Authoring system functions to provide Livestock Informational Objects via the use of a centralized repository of uniquely identified, immutable Livestock Informational Objects. This system automates the authoring, maintenance and distribution of the Livestock Informational Objects by using an Internet-based paradigm and a centralized repository of uniquely-identified, immutable Data Elements. The Common Point Authoring system provides a set of software modules that the manufacturers can use to author, maintain and distribute Livestock Informational Objects and their customers, as Members of the system of Livestock Informational Objects, can use to retrieve, maintain and distribute the Livestock Informational Objects. The system's interconnectivity allows for the use of an Internet-based paradigm for the purchase and sale among Members of the system of Livestock Informational Objects as commodities, and for reducing the burden costs among Members of compliance with government regulations.

The '668 Patent resulted from a continuation-in-part of the '869 Patent. The '000, '765, '902, and '790 Patents resulted from a series of continuations from the '668 Patent.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with preliminary constructions with the aim of focusing the parties' arguments and facilitating discussion. Those preliminary constructions are noted below within the discussion for each term.

## II. LEGAL PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview*

*Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  "In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period."  *Teva*, 135 S. Ct. at 841 (citation omitted).  "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence.    These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal."  *Id.* (citing 517 U.S. 370).

To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See Phillips*, 415 F.3d at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312–13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id.*  Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id.* Differences among the claim terms can also assist in understanding a term's meaning.  *Id.*  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

### III. AGREED TERMS

The parties reached agreement on constructions as stated in their December 5, 2023 Joint Claim Construction and Pre-Hearing Statement (Dkt. No. 38 at 1–3) and in their February 23, 2024

Joint Claim Construction Chart Pursuant to P.R. 4-5(d) (Dkt. No. 56).  Those agreements are set forth in Appendix A to the present Claim Construction Memorandum and Order.

## IV.  DISPUTED TERMS

In their claim construction briefing, the parties organize the disputed terms differently. Rather than attempt to divine an ideal ordering, the Court adopts Plaintiff's ordering.  The parties also label the terms with numbering that each party used in its claim construction disclosures, and, for purposes of briefing, the parties have used Plaintiff's numbering.  Dkt. No. 46 at 1 n.1.  But because the briefing does not present the terms in numerical order, and because not all terms are still at issue, the Court sets forth the disputed terms with its own letter designations (while also noting the number designation used by Plaintiff).

### A.  "information object" and "informational object" (Term No. 1)

<table>
<tr><td colspan="2"><b>"information object"</b><br><b>"informational object"</b><br>('696 Patent, Claims 1, 2, 4–9, 12, 13, 15–20, 23, 24, 26–31;<br>'869 Patent, Claims 1–5, 9, 10, 14–18, 22–24;<br>'668 Patent, Claims 1–5, 7–11;<br>'000 Patent, Claims 1–4, 8–11;<br>'765 Patent, Claim 1;<br>'902 Patent, Claims 1–4, 6–9, 11;<br>'790 Patent, Claims 1–4, 6–9, 11)</td></tr>
<tr><td><b>Plaintiff's Proposed Construction</b></td><td><b>Defendant's Proposed Construction</b></td></tr>
<tr><td>A set of instructions or information comprised of one or more data elements, data element sets, or informational objects, or any combination thereof.<br><br>Not indefinite.</td><td>Indefinite</td></tr>
</table>

Dkt. No. 38, Ex. A at 1; *id.*, Ex. B at 1; Dkt. No. 45 at 2; Dkt. No. 56, Ex. A at 1.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "a set of one or more data elements, data element sets, informational objects, or any combination thereof."

(1)  The Parties' Positions

Plaintiff argues that "'[o]bjects' were well-known and well-understood in the field of computer science and software development," and "[t]he specifications for the patents-in-suit would have further informed and confirmed this understanding to one of skill in the art at the time of the invention."  Dkt. No. 45 at 3.  Plaintiff also argues that "what IBM submits is an issue of indefiniteness is really an issue of breadth, and breadth is not indefiniteness." *Id.* at 4 (citation and internal quotation marks omitted).

Defendant responds that these terms are indefinite "in part because the Asserted Patents inconsistently describe whether informational objects must be 'uniquely identified' or 'immutable,' and what the contents of an 'informational object' may be." Dkt. No. 46 at 1.  In this regard, Defendant submits that "[c]ourts have found claims indefinite when drafters use terms inconsistently—either within a single patent or across a patent family," and "[w]hile the '696 Patent provides that, by definition, an 'informational object' is 'uniquely identified and stored in immutable form'[,] the Remaining Asserted Patents state that an 'informational object' is uniquely identified and immutable only if it is 'registered for use' with the system." *Id.* at 2 (citations omitted).  Further, Defendant argues, "[t]he definition provided by the Remaining Asserted Patents is also internally inconsistent." *Id.* at 3.  Finally, Defendant argues that the dictionary definitions cited by Plaintiff do not clarify the meanings of these terms. *Id.* at 4–5.

Plaintiff replies that, "[f]or example, claim 1 of the '668 provides important context that the claimed system involves 'hierarchically authored data objects' in which a 'data element' is

incorporated into an 'informational object,'" and "IBM does not discuss the inventors' repeated invocation of a hierarchical structure." Dkt. No. 48 at 2. Plaintiff also argues that "[t]he definitions [in the specifications] are not inconsistent and only provide further understanding of what the inventors intended the terms to mean in the claims." *Id.* Further, Plaintiff argues that "[e]very asserted claim involves the concept of converting *draft* informational objects into *immutable* informational objects (and many involve the same with respect to data elements)," and "[t]hus, there can be no reasonable uncertainty in reading the claims whether an 'informational object' or 'data element' is immutable." *Id.* at 3.

At the March 8, 2024 hearing, the parties presented oral arguments as to these terms.

(2)  Analysis

The '696 Patent discloses:

> Informational Object comprises a set of information that is *uniquely identified* and stored in *immutable* form for use by the present informational object authoring and distribution system. *The set of information contained in an informational object comprises a plurality of individual data elements*, each of which is also *immutable* in content.

'696 Patent at 4:21–26 (emphasis added); *see id.* at 6:2–8 (describing the "informational object") & Fig. 2 (illustrating the "information[al] object" and its contents).

The other patents-in-suit disclose:

> The [] Informational Objects are not document files or database files, but instead are objects that contain sequences of instructions and information on which the instructions operate.
>
> * * *
>
> An *Informational Object is comprised of one or more Data Elements*, Data Element Sets, or Informational Objects, or any combination thereof.  An Informational Object is *immutable* and *uniquely identified* if registered for use with the Common Point Authoring System. An Informational Object is the *largest group of data* in the Common Point Authoring System and may be industry specific.

'869 Patent at 5:17–20 & 8:66–9:5 (emphasis added); *see id.* at 1:29–60, 4:44–51, 5:7–42, 7:30–40, 13:65–14:10, 14:23–28 & 18:19–20:2.

The disclosure of the later patents can be considered when construing terms in the earlier '696 Patent.  *See Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 310 F. App'x 404, 407 (Fed. Cir. Feb. 13, 2009) ("The disclosure in the [later] patent is relevant for claim construction of the earlier . . . patent claim because the [later] patent was issued to the same inventors from a continuation-in-part of the [earlier] patent."); *see also SightSound Techs. LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents "derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.") (quoting *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005)).

Defendant argues that the above-cited disclosures in these patents are inconsistent with one another as to the meaning of "informational object."  *See TVnGO Ltd. v. LG Elecs. Inc.*, 861 F. App'x 453, 456–60 (Fed. Cir. June 28, 2021) (recognizing inconsistencies in usage).

On balance, no inconsistency is apparent.  Rather, the above-cited portions of the specifications explain that an informational object can be composed of data elements and/or other informational objects, and, when used with the common point authoring system, the informational object can be uniquely identified and immutable, which is addressed by other claim language.  *See, e.g.,* '668 Patent at Cl. 1 ("draft informational object" and "draft data element" are "convert[ed]" into "immutable informational object" and "immutable data element").  The recital of an "immutable informational object" weighs against requiring all "informational objects" to necessarily be immutable.  *Id.*; *see, e.g., Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed.

Cir. 2016) ("Construing a claim term to include features of that term already recited in the claims would make those expressly recited features redundant.").

Also, Defendant argues that an inconsistency arises because whereas the '696 Patent lacks any size parameters, the later patents state that "[a]n Informational Object is the largest group of data in the Common Point Authoring System."  '869 Patent at 8:66–9:5.  No inconsistency is apparent, however, because this statement in the later patents provides context but is not part of the definition of what an "informational object" is, particularly when considering that an informational object can itself be part of another informational object. *See id.*  Indeed, although the patents set forth a section in which "terms are defined," those disclosures refer to what a data element "comprises" (or "is comprised of") and what an informational object "comprises" (or "is comprised of"), and "comprises" in patent parlance is generally non-exclusive.  '696 Patent at 4:3–4 & 4:17–26; '869 Patent at 8:10–11 & 8:59–9:5.

Finally, Defendant argued at the March 8, 2024 hearing that it is unclear how to determine whether a particular set of data is a "data element" or an "informational object," but the claims themselves provide context for the relationship between "data element" and "informational object."

The Court therefore hereby construes **"information object"** and **"informational object"** to mean **"a set of one or more data elements, data element sets, informational objects, or any combination thereof."**

**B.  "data element" and "data elements" (Term No. 2)**

<table>
<tr><td colspan="2" align="center">**"data element"**<br>**"data elements"**<br>('696 Patent, Claims 1–3, 5–9, 12–14, 16–20, 23–25, 27–31;<br>'869 Patent, Claims 3–5, 14–17, 22–24;<br>'668 Patent, Claims 1, 4, 5, 7, 10, 11;<br>'000 Patent, Claims 4, 8, 11;<br>'902 Patent, Claims 4, 11;<br>'790 Patent, Claims 4, 11)</td></tr>
<tr><td>**Plaintiff's Proposed Construction**</td><td>**Defendant's Proposed Construction**</td></tr>
<tr><td>No construction necessary. Alternatively, plain and ordinary meaning.<br><br>Not indefinite.</td><td>Indefinite</td></tr>
</table>

Dkt. No. 38, Ex. A at 2; *id.*, Ex. B at 2; Dkt. No. 56, Ex. A at 23.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning."

(1)  The Parties' Positions

Plaintiff argues that these terms are readily understandable in the context of the claims and the specification, and "a PHOSITA would have readily understood what a data element was at the time of the inventions."  Dkt. No. 45 at 5 (citations omitted).

Defendant responds that "the Asserted Patents provide different definitions that make it unclear whether a data element is 'uniquely identified' or 'immutable,' or what, if any, size restrictions a data element should conform to."  Dkt. No. 46 at 5.  Defendant argues that the dictionary definitions cited by Plaintiff do not clarify the meanings of these terms. *Id.* at 6.  Further, Defendant argues that "[t]he definitions for 'data element' and 'informational object' in the Asserted Patents also overlap, so a skilled person could not determine the bounds of each term relative to each other." *Id.*

Plaintiff replies as to these terms together with "information object" and "informational object," which are addressed above.  *See* Dkt. No. 48 at 1–7.

At the March 8, 2024 hearing, the parties presented oral arguments as to these terms.

(2)  Analysis

Claim 1 of the '668 Patent, for example, recites:

1. A common point authoring system for complex sharing of hierarchically authored data objects in a distribution chain, comprising:
    authoring means for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes;
    authenticating means for enabling an authorized individual to authenticate said draft informational object created by said authorized authoring member;
    completion means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier;
    database management means for writing said created immutable informational object into a memory for use by authorized accessing members;
    draft *data element* means for enabling an authorized authoring member to create data comprising at least one draft *data element*;
    wherein said authoring means incorporates said at least one draft *data element* into said draft informational object;
    wherein said authenticating means comprises:
        *data element* authenticating means for enabling an authorized individual to authenticate said draft *data element* created by said authorized authoring member; and
    wherein said completion means converts said authenticated at least one draft *data element* to a corresponding immutable draft *data element* which is identified by a unique identifier.

The '696 Patent discloses:

Data Element comprises a *set of data* that is uniquely identified and stored in immutable form for use by the present informational object authoring and distribution system.

'696 Patent at 4:17–20 (emphasis added).  The other patents-in-suit disclose:

A Data Element is the smallest unit of data in the Common Point Authoring system. A Data Element may be *any information and or any instructions*.  A Data Element is immutable and uniquely identified if registered for use with the Common Point Authoring system.

'869 Patent at 8:54–58 (emphasis added).

Considering these disclosures, the parties' dispute regarding "data element" and "data elements" is essentially the same as the parties' dispute regarding "information object" and "informational object," which is addressed above.  For the same reasons discussed above as to "information object" and "informational object," the Court expressly rejects Defendant's indefiniteness arguments.  Also, Defendant argues that the patents are unclear as to "whether a data element is 'a single unit' of data, a 'group' of data, or a 'set' of data; or whether there is any difference between a 'single unit' and 'set'" (Dkt. No. 46 at 6), as well as that "it is not clear in what instances data is properly considered a 'data element' versus an 'informational object'" (*id.* at 8), but the above-reproduced disclosures demonstrate that "data element" is a broad term that could potentially encompass any amount of data, and "breadth is not indefiniteness." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017); *see id.* at 1365 ("'Reasonable certainty' does not require 'absolute or mathematical precision.'") (quoting *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015)).  The indefiniteness opinions of Defendant's expert are likewise unpersuasive.  *See* Dkt. No. 46, Ex. A, Dec. 5, 2023 Thuraisingham Decl. at ¶¶ 72–95.

Defendant presents no alternative proposed construction, and no further construction is necessary.  The Court accordingly hereby construes **"data element"** and **"data elements"** to have their **plain meaning**.

C.  **"immutable" (Term No. 3)**

| **"immutable"**<br>('696 Patent, Claims 1, 12, 23;<br>'869 Patent, Claims 1, 3, 9, 14, 17, 22;<br>'668 Patent, Claims 1, 7;<br>'000 Patent, Claims 1, 3, 4, 8, 11;<br>'765 Patent, Claim 1;<br>'902 Patent, Claims 1–4, 6–9, 11;<br>'790 Patent, Claims 1–4, 6–9, 11) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Permanent, unchangeable, or fixed.<br><br>Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 3; *id.*, Ex. B at 3; Dkt. No. 56, Ex. A at 34.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "unchangeable."

(1)  The Parties' Positions

Plaintiff argues that "the term 'immutable' was generally understood by those skilled in the art at the time of the invention and would have conveyed the term's meaning to one skilled in the art with reasonabl[e] certainty." Dkt. No. 45 at 7.  Plaintiff also argues that "[t]he specifications would have further informed and confirmed this understanding to one of skill in the art at the time of the invention." *Id.*

Defendant responds that "[w]hile the claims above describe 'changing' an 'immutable' informational object, the specifications do not explain how an 'immutable' object would be 'changed,' or what it means for an object to be 'immutable' *and* subject to revision." Dkt. No. 46 at 10.

Plaintiff replies that "[i]n view of the repeated and consistent use of the term throughout the record, IBM cannot meet its heavy burden to prove that all of the claims of the asserted patents

are indefinite." Dkt. No. 48 at 5. Plaintiff submits that "informational objects can be converted to immutable form, including if registered for use in the system," and "the informational object itself is then immutable because it is then permanently stored in memory and chained together with other registered objects via pointers." *Id.* (citations omitted).

At the March 8, 2024 hearing, the parties presented oral arguments as to these terms.

(2) Analysis

The specifications disclose, for example:

> A particular Livestock Informational Object contains *pointers that identify a plurality of immutable 'building blocks' of information* that, when collected, comprise the Livestock Informational Object. Each building block is comprised of a Data Element and a unique identifier that exclusively identifies that Data Element.

> Since *the Data Elements are fixed*, they do not require updating and a *new version* of a Livestock Informational Object for a particular animal simply includes a unique identifier that *points to a replacement Data Element*, while the original Data Element is maintained in the central database. Thus, for each venue [*sic*, version], the contents of the Livestock Informational Object remain *immutable*, even though the format can vary. In addition, the creation of a new Livestock Informational Object can utilize existing Data Elements from the central database if the content of the associated portion of the Livestock Informational Object is identical to this Data Element. Thus, authoring new Livestock Informational Objects can benefit from a repository of standardized Data Elements, with only the unique segments of the new Livestock Informational Object requiring the creation of a new Data Element.

> * * *

> The present Common Point Authoring system 10 functions to enable Subscribers to immutably author, uniquely identify, authenticate, track, own and control, advertise, sell and/or purchase Informational Objects describing an animal or its products within the beef livestock supply, distribution and consumption chain. To accomplish the authentication task, the Informational Object must contain *immutable data*, yet the Informational Object must also be capable of being *updated* with data regarding the history of movement of the animal or its products within the livestock beef industry supply, distribution and consumption chain 19.

'869 Patent at 5:20–42 & 7:30–40 (emphasis added); *see* '696 Patent at 2:40–54 (similar as to Material Safety Data Sheets).

The specifications thus disclose that an informational object composed of immutable data elements can be updated by creating a new version that points to different data elements.

Defendant notes that some of the claims of the patents-in-suit expressly recite a "copy" process.  For example, Claim 8 of the '000 Patent recites "a copy process for creating a copy of the immutable informational object."  Defendant cites authority that different, irreconcilable usages of a term can give rise to indefiniteness.  *See TVnGO Ltd. v. LG Elecs., Inc.*, No. 18-10238, 2020 WL 1899781, at *5 (D.N.J. Apr. 17, 2020), *aff'd*, 831 F. App'x 453, 460 (Fed. Cir. 2021) ("[T]he terms are indefinite because the different uses cannot be reconciled in a manner that informs a POSA . . . of the meaning of claim terms.").

Express recitals of creating a copy, however, are not inconsistent with finding that an informational object composed of immutable data elements can be updated by creating a new version that points to different data elements.  The opinions of Defendant's expert are likewise unpersuasive.  *See* Dkt. No. 46, Ex. C, Dec. 5, 2023 Thuraisingham Decl. at ¶¶ 97–103.

At the March 8, 2024 hearing, Defendant emphasized Claim 1 of the '765 Patent, Claim 6 of the '902 Patent, and Claim 6 of the '790 Patent as reciting changing an immutable object.  Claim 1 of the '765 Patent, for example, recites "enabling . . . an independent member identified in said offer data to access and change said immutable informational object."  Defendant argues that the patents-in-suit do not explain how an "immutable" informational object could "change."  *See also* '902 Patent, Cl. 6; '790 Patent, Cl. 6.  Any internal inconsistency in these claims perhaps might affect the viability of these claims, but this does not demonstrate that the term "immutable" is indefinite as used throughout the patents-in-suit.  Defendant did not request a finding of indefiniteness at to these specific claims, and indeed Plaintiff expressed at the hearing that it is

probably no longer asserting these claims.  The Court therefore does not further address these claims.

With Defendant's indefiniteness arguments thus rejected, the parties essentially agree on the meaning of "immutable," with Defendant's expert citing various dictionary definitions that are consistent with Plaintiff's proposal of "unchangeable."  *Id.* at ¶ 99.

The Court therefore hereby construes **"immutable"** to mean **"unchangeable."**

### D.  "authorized" (Term No. 6)

| "authorized" ('696 Patent, Claims 1, 2, 4, 5, 12–16, 23–27; '869 Patent, Claims 1–3, 5, 9, 10, 14, 16–18, 22, 24; '668 Patent, Claims 1, 2, 5, 7, 8, 11; '000 Patent, Claims 1, 2, 4, 8, 9, 11; '765 Patent, Claim 1; '902 Patent, Claims 1, 6; '790 Patent, Claims 1, 6) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "an entity [e.g., a business or individual] given permission"<br><br>Alternatively:<br>"giving an entity (e.g., a business or individual) permission" | "having good standing and appropriate permissions" |

Dkt. No. 38, Ex. A at 4; *id.*, Ex. B at 5; Dkt. No. 48 at 10; Dkt. No. 56, Ex. A at 62.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "having appropriate permissions."

(1)  The Parties' Positions

Plaintiff argues that Defendant's proposal of "good standing" should be rejected because it would improperly import a limitation from the specification.  Dkt. No. 45 at 9.

Defendant responds that whereas Defendant's proposal is supported by the specification, Plaintiff's proposal "is inconsistent with the claim language because it rewrites the claims to construe an adjective ('authorized') as a noun ('an entity')," "[a]nd it is inconsistent with the specification because it ignores half of the discussion of 'authorized' (referring to a member in 'good standing'), focusing only on the word 'permission.'"  Dkt. No. 46 at 28.  In particular, Defendant argues that "Pardalis does not justify its selective citations or why 'having good standing,' which appears in the same sentence as 'permissions' in describing 'authorized,' should be omitted." *Id.*

Plaintiff replies that whereas "IBM criticizes Pardalis's proposed construction as construing 'authorized' as a noun instead of an adjective," "[t]hat is not Pardalis's intent, and Pardalis proposes that the term could instead be construed as 'giving an entity (e.g., a business or individual) permission.'"  Dkt. No. 48 at 10.  Plaintiff also argues that Defendant's proposal "creates ambiguity as to what constitutes 'good standing.'"  *Id.* (citation omitted).

At the March 8, 2024 hearing, the parties presented oral arguments as to this term.

(2)  Analysis

The parties essentially agree that "authorized" requires having appropriate permissions. The parties dispute whether "authorized" also requires "good standing."

The specification discloses:

[W]hen a member accesses the informational object authoring and distribution system 10 at step 502, the member's identity is checked at step 503 by the authentication server 141 against an authorized member database 123 to ensure that this member has the *good standing* and permissions to create an additional data element at step 512 by accessing the process illustrated in FIG. 4.

\* \* \*

FIG. 5 illustrates in flow diagram form the operation of the informational object creation process of the present informational object authoring and distribution

system 10. The members who are authorized to create informational objects are the manufacturers who produce the products for which the informational objects are required. Thus, in the example of a Material Safety Data Sheet, the chemical manufacturer is obligated via regulatory measures to produce a Material Safety Data Sheet for each chemical manufactured. It is inappropriate to authorize others to engage in this process, since the creation of bogus informational objects would corrupt the system. Therefore, when a member accesses the informational object authoring and distribution system 10 at step 501 and executes the authoring system login process at step 502, the member's identity is checked by the authentication server 141 against an authorized membership database 123 at step 503 to ensure that this member is a member in *good standing* and has the authoring permissions to access the process illustrated in FIG. 5. If not, at step 504, the informational object authoring and distribution system 10 logs out.

'696 Patent at 7:67–8:7 & 9:11–31 (emphasis added); *see id.* at 11:44–48 (similar) & 12:25–29 (similar); *see also* '869 Patent at 16:61–17:14 ("a Member may set initial Permissions concerning access by other Members to the information"), 18:22–35 ("good standing"), 21:49–65, 22:33–36 ("prevent unauthorized access of a Livestock Informational Object or Data Element without proper authority (*i.e.*, without the appropriate Permissions)") (emphasis added) & 22:52–59 ("good standing").

Read in context, the disclosures regarding "good standing" refer to a specific feature of particular disclosed embodiments that should not be imported into the claims. *See Phillips*, 415 F.3d at 1323.

The Court therefore hereby construes **"authorized"** to mean **"having appropriate permissions."**

**E. "authenticating" and "authenticated" (Term No. 7)**

| **"authenticating"**<br>**"authenticated"**<br>('696 Patent, Claims 1, 8, 12, 19;<br>'869 Patent, Claims 1, 3, 9, 14, 17, 22;<br>'668 Patent, Claims 1, 7;<br>'000 Patent, Claims 1, 8;<br>'765 Patent, Claim 1;<br>'902 Patent, Claims 1, 6;<br>'790 Patent, Claims 1, 6) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "proving[ed] that data, information, or a thing is genuine or verifying[ed] origin of the data, information, or thing" | "checking for proper content, format, and permissions" / "checked for proper content, format, and permissions" |

Dkt. No. 38, Ex. A at 5; *id.*, Ex. B at 6; Dkt. No. 56, Ex. A at 81.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary constructions: "authenticating: 'determining whether something is of genuine origin'" and "authenticated: 'determined to be of genuine origin.'"

(1) The Parties' Positions

Plaintiff argues that "IBM's construction is not inconsistent with applying th[e] plain meaning of the term, but improperly seeks to import one embodiment for 'authenticating' from the specification into the claims" and "is improper for seeking to limit the claims to a preferred embodiment for *how* the informational object *may* be authenticated." Dkt. No. 45 at 10.

Defendant responds that because "the specification describe[s] what it *means* to 'authenticate' an informational object or data element in the context of the claimed system, which is different than how the term is used ordinarily," the specification "do[es] not merely outline a preferred embodiment of the invention, but instead give[s] meaning to 'authenticate.'" Dkt. No. 46 at 29.   Defendant also argues that "Pardalis's general dictionary definitions—which define

'authentic' or 'authenticate' as, for example, 'having a claimed and verifiable origin,' or 'prove genuine'—are also inapplicable because they do not relate to the specific context of a computer system where 'authenticate' is one of the steps for processing a 'data element' or 'informational object.'" *Id.* at 30.

At the March 8, 2024 hearing, the parties presented oral arguments as to this term.

(2)  Analysis

Claim 1 of the '696 Patent, for example, recites a "means for authenticating said at least one of a draft data element and a draft informational object created by said authorized authoring member."

The '696 Patent discloses:

> [A]t step 403, the authoring server 143 . . . reviews the draft data element to determine whether the language contained therein is in *approved format and content* . . . .
>
> * *
>
> Fig. 6 illustrates in flow diagram form the operation of the informational object registration process . . . . At step 602, the authoring server 143 checks the unregistered informational object for *proper content, format and permissions*.

'696 Patent at 8:27–31 & 10:17–27 (emphasis added).  Also, the '869 Patent, for example, discloses:

> *Authenticated* informational objects are needed in this industry to track animals and their products from genetic selection and birth to consumption for compliance with appropriate government regulations and/or commercial reasons.

'869 Patent at 1:61–67 (emphasis added).

Defendant argues that such disclosures demonstrate that the patentee used "authenticating" in a special way in the patents-in-suit, but Defendant does not show that the patents-in-suit contain any definition or disclaimer.  Rather, "authenticating" is used according to its ordinary meaning as

Plaintiff has proposed. *See, e.g., Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").  Evaluating "proper content, format, and permissions," as Defendant proposes, by contrast, relates to specific features of particular disclosed embodiments that should not be imported into the claims. *See Phillips*, 415 F.3d at 1323.

Further, Defendant submits that, for corresponding structure for the "means for updating" terms, Plaintiff relies upon disclosure regarding checking for proper content, format and permissions (Dkt. No. 46 at 29), but because the corresponding structure for means-plus-function terms governed by 35 U.S.C. § 112, ¶ 6, is limited to structures disclosed in the specification, Defendant's argument to limit the ordinary meaning of "authenticating" on this basis is unpersuasive in the context of terms that are not governed by 35 U.S.C. § 112, ¶ 6.

Finally, considering that the patentee used the term "authenticating" according to its ordinary meaning in common usage, Plaintiff persuasively submits extrinsic general-purpose dictionary definitions that define "authenticating" as referring to determining whether something is of genuine origin.  Dkt. No. 45, Ex. K, *American Heritage College Dictionary* 92 (3d ed. 1993) (defining "authentic" as "Having a claimed and verifiable origin"; defining "authenticate" as "To establish the authenticity of; prove genuine"); *id.*, Ex. L, *Webster's Third New International Dictionary* 146 (2002) (defining "authentic" as "of an origin that cannot be questioned"; defining "authenticate" as, for example, "to establish convincingly as accurate, true, real, or genuine" or "to verify the origin of"); *Phillips*, 415 F.3d at 1322 ("[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words").

The Court hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"authenticating"** | **"determining whether something is of genuine origin"** |
| **"authenticated"** | **"determined to be of genuine origin"** |

**F. "said data elements and [said] informational objects" (Term No. 16)**

| **"said data elements and [said] informational objects"**<br>('696 Patent, Claims 6, 7, 17, 18, 28, 29) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary meaning.<br><br>Not indefinite.<br><br>See also "informational object" and "data element" above. | Indefinite |

Dkt. No. 38, Ex. A at 6; *id.*, Ex. B at 7.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning."

Plaintiff argues that there is no indefiniteness based on purported lack of antecedent basis because "the plain language of the independent claims (from which these disputed claims depend) clearly provide the antecedent basis for the disputed terms." Dkt. No. 45 at 12.

Defendant's response brief does not specifically address this term. *See* Dkt. No. 46.

This term is not addressed in the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 56). At the March 8, 2024 hearing, Defendant noted that some of the Court's preliminary constructions address terms that are no longer at issue, and Defendant cited the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (*id.*). The Court

therefore concludes that this term is no longer in dispute and need not be construed.  The Court

accordingly does not further address this term.

**G.  "said data elements" and "said plurality of data elements" (Term No. 22)**

| **"said data elements"**<br>**"said plurality of data elements"**<br>('869 Patent, Claims 4, 5, 15–17, 22;<br>'668 Patent, Claims 4, 5, 10, 11)** | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Plain and ordinary meaning: "said plurality of data."<br><br>*See also* "data element" above.<br><br>Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 7; *id.*, Ex. B at 8; Dkt. No. 56, Ex. A at 108.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with

the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's

constructions of constituent terms recited therein)."

(1)  The Parties' Positions

Plaintiff argues that "the phrase is straightforward and easily understood in the context of

the claim language and specification," and "[w]hile claim 7 does not explicitly call for a 'plurality

of data elements,' claims are not necessarily indefinite for lack of antecedent basis where the

context of the claims in light of the specification would make the language readily understandable

to a PHOSITA."  Dkt. No. 45 at 12–13 (citation omitted).

Defendant's response brief does not address these terms.  *See* Dkt. No. 46.

(2)  Analysis

Defendant's response brief does not address these terms in these claims, and Defendant thus does not meet its burden to show indefiniteness, whether by purported lack of antecedent basis or otherwise.

The Court therefore hereby expressly rejects Defendant's assertion of indefiniteness. Defendant presents no alternative proposed construction, and no further construction is necessary.

The Court therefore hereby construes **"said data elements"** and **"said plurality of data elements"** to have their **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

## H.  "[the/said] unique identifiers that correspond to a selected set of [said/a/the] [plurality of] data elements" (Term No. 25)

| **"said unique identifiers that correspond to a selected set of said plurality of data elements"** <br> **"said unique identifiers that correspond to a selected set of said data elements"** <br> **"the unique identifiers that correspond to a selected set of a plurality of data elements"** <br> **"the unique identifiers that correspond to a selected set of the plurality of data elements"** <br> ('869 Patent, Claims 4, 5, 15–17, 22–24; <br> '668 Patent, Claims 4, 5, 10, 11; <br> '000 Patent, Claims 4, 8, 11; <br> '902 Patent, Claims 4, 11; <br> '790 Patent, Claims 4, 11) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary. <br><br> Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 7; *id.*, Ex. B at 8; Dkt. No. 56, Ex. A at 108.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's constructions of constituent terms recited therein)."

<u>(1)  The Parties' Positions</u>

Plaintiff argues that "this term appears in numerous claims in various forms, and thus the basis for IBM's contention would presumably vary from claim to claim," and "[t]hat said, using the '902 patent as an example, 'the unique identifiers that correspond to a selected set of a plurality of data elements' plainly refers to unique identifiers for data elements within an informational object, as discussed throughout the specification . . . and as illustrated in Figure 2."  Dkt. No. 45 at 13.

Defendant's response brief does not address these terms.  *See* Dkt. No. 46.

<u>(2)  Analysis</u>

Defendant's response brief does not address these terms in these claims, and Defendant thus does not meet its burden to show indefiniteness, whether by purported lack of antecedent basis or otherwise.

The Court therefore hereby expressly rejects Defendant's assertion of indefiniteness. Defendant presents no alternative proposed construction, and no further construction is necessary.

The Court therefore hereby construes these above-identified terms to have their **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

## I.  "said first and said second means for maintaining" (Term No. 20)

| **"said first and said second means for maintaining"**<br>('696 Patent, Claim 12) ||
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary meaning.<br><br>Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 7; *id.*, Ex. B at 7; Dkt. No. 56, Ex. A at 106.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning."

(1)  The Parties' Positions

Plaintiff argues that "the means for maintaining is simply the registered element database and registered object database," and "this claim is infringed when the steps are performed, the last step involving databases."  Dkt. No. 45 at 14.

Defendant's response brief does not address this term.  *See* Dkt. No. 46.

(2)  Analysis

Defendant's response brief does not address these terms in these claims, and Defendant thus does not meet its burden to show indefiniteness.

The Court therefore hereby expressly rejects Defendant's assertion of indefiniteness. Defendant presents no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes **"said first and said second means for maintaining"** to have its **plain meaning**.

**J.  "The common point authoring system of claim 9 further comprising enabling an authorized accessing member to retrieve a selected informational object" (Term No. 28)**

| **"The common point authoring system of claim 9 further comprising enabling an authorized accessing member to retrieve a selected informational object"** ('869 Patent, Claim 10) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary meaning.  Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 9; *id.*, Ex. B at 11; Dkt. No. 56, Ex. A at 114.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's constructions of constituent terms recited therein)."

(1)  The Parties' Positions

Plaintiff argues that "[w]hile the preamble of claim 10 refers to the 'system of claim 9,' a PHOSITA would readily understand that the claim is a method claim because it simply adds one step to the steps recited in claim 9."  Dkt. No. 45 at 14–15.  Plaintiff also argues that "[t]he preamble of claim 10 is not limiting because it does not recite essential structure for the claimed method, does not provide antecedent basis, and was not used by the patentee to overcome prior art," and "[b]ecause the preamble is not limiting, it cannot render the claim indefinite."  *Id.* at 15 (citations omitted).

Defendant responds that "[t]he preamble, which is directed to a 'system,' is limiting because it provides antecedent basis and meaning to the claim," and "Claim 10 depends from Claim 9 of the '869 Patent, which contains numerous method limitations," such that Claim 10 of the '869 Patent is an improper mixed method-apparatus claim.  Dkt. No. 46 at 27.

At the March 8, 2024 hearing, the parties presented oral arguments as to this term.

(2)  Analysis

Defendant asserts indefiniteness as to Claim 10 of the '869 Patent, which depends from Claim 9, and Claims 9 and 10 recite (emphasis added):

9.  A method for maintaining data for use by authoring and accessing members to track uniquely identified products, comprising:
     enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes;
     authenticating said draft informational object created by said authorized authoring member;

converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier;

writing said created immutable informational object into a memory for use by authorized accessing members; and

updating an informational object by creating a new informational object relating back to said informational object and containing new data.

10. *The common point authoring system of claim 9* further comprising enabling an authorized accessing member to retrieve a selected informational object.

"In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim. *Pitney Bowes*[*, Inc. v. Hewlett-Packard Co.*], 182 F.3d [1298,] 1305 [(Fed. Cir. 1999)]. Conversely, a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.' *Rowe v. Dror*, 112 F.3d 473, 478, 42 USPQ2d 1550, 1553 (Fed. Cir. 1997)." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

Also, in some cases a preamble may be limiting if it states a "fundamental characteristic of the claimed invention," "serves to focus the reader on the invention that is being claimed," or "states the framework of the invention." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1343 (Fed. Cir. 2006). Also, a preamble may be limiting if it sets forth a feature "underscored as important by the specification." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (quoting *Catalina*, 289 F.3d at 808).

None of these considerations, however, compels finding the preamble of above-reproduced dependent Claim 10 to be limiting. Rather, the reference to the "common point authoring system of claim 9" is merely descriptive (even if, as Plaintiff acknowledged at the March 8, 2024 hearing, it is erroneous), and the remainder of dependent Claim 10 adds a step to the method of independent

Claim 9.  The opinion of Defendant's expert to the contrary is unpersuasive.  *See* Dkt. No. 46, Ex. A, Dec. 5, 2023 Thuraisingham Decl. at ¶ 129.

Because the preamble of Claim 10 is not limiting, no issue arises as to whether Claim 10 is an improper mixed method-apparatus claim.

The Court therefore hereby expressly rejects Defendant's indefiniteness argument. Defendant presents no alternative proposed construction, and no further construction is necessary. The Court accordingly hereby construes Claim 9 of the '869 Patent to have its **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

**K.   "The common point authoring system of claim 14 wherein said step of enabling comprises: maintaining . . . a set of data that defines an informational object . . . ." (Term No. 29)**

| **"The common point authoring system of claim 14 wherein said step of enabling comprises: maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"** <br> ('869 Patent, Claim 15) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary meaning. <br><br> Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 9; *id.*, Ex. B at 12.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's constructions of constituent terms recited therein)."

<u>(1)  The Parties' Positions</u>

Plaintiff argues that "[t]he preamble is . . . not limiting and cannot render the claim indefinite," and, "even if limiting, it would be readily apparent to a PHOSITA that claim 15 adds

another step to the steps of claim 14 and indicates that those steps would be practiced by a system." Dkt. No. 45 at 15.

Defendant responds that "the preamble, which is directed to a 'system,' is limiting because it provides antecedent basis and meaning to the claim," and "Claim 15 also depends from Claim 14 of the '869 Patent, which contains numerous method limitations," such that Claim 15 of the '869 Patent is an improper mixed method-apparatus claim.  Dkt. No. 46 at 27.

(2)  Analysis

The parties here present essentially the same dispute discussed above as to Claims 9 and 10 of the '869 Patent, and the Court here reaches the same conclusion for the same reasons.

The Court thus finds that the preamble of Claim 15 is not limiting, and therefore no issue arises as to whether Claim 15 is an improper mixed method-apparatus claim.  The contrary opinion of Defendant's expert is unpersuasive.  *See* Dkt. No. 46, Ex. A, Dec. 5, 2023 Thuraisingham Decl. at ¶ 134.

The Court therefore hereby expressly rejects Defendant's indefiniteness argument. Defendant presents no alternative proposed construction, and no further construction is necessary. The Court accordingly hereby construes Claim 15 of the '869 Patent to have its **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

L.    "wherein [said/the] authorized authoring member creates [a data element / an informational object]" (Term Nos. 26, 27, 30, 31)

| "[The information authoring and distribution system of claim [1/23]] wherein said authorized authoring member creates a data element" ('696 Patent, Claims 3, 4, 5, 15, 16, 25, 26, 27)  "[The common point authoring system of claim [4/5/15/23]] wherein said authorized authoring member creates an informational object" "[The common point authoring system of claim 8] wherein the authorized authoring member creates an informational object" ('869 Patent, Claims 5, 16, 24; '668 Patent, Claim 5; '000 Patent, Claim 11)  "The common point authoring system of claim 15 wherein said authorized authoring member creates an informational object, said step of converting further comprises: associating said unique identifier assigned to said created informational object with said unique identifiers that correspond to a selected set of said plurality of data elements" ('869 Patent, Claim 16)  "The common point authoring system of claim 8 wherein the authorized authoring member creates an informational object, the authoring server further comprises: mapping associating the unique identifier assigned to the created immutable informational object with the unique identifiers that correspond to a selected set of the plurality of data elements" ('000 Patent, Claim 11) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary.  Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 8 & 9–10; *id.*, Ex. B at 9, 10 & 14; Dkt. No. 56, Ex. A at 113 & 115.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's constructions of constituent terms recited therein)."

(1)  The Parties' Positions

Plaintiff argues: "The 'wherein' recitations in the dependent claims at issue merely recite the intended result of the independent claims from which they depend.  Specifically, the creation of a data element or an informational object by an authorized authoring member is an inherent and expected outcome of the broader functionality described in each respective independent claim." Dkt. No. 45 at 16.

Defendant argues that that preambles are limiting and that these claims are improper mixed method-apparatus claims.  Dkt. No. 46 at 27.

(2)  Analysis

Of these terms that Plaintiff has grouped together, Defendant specifically addresses only the term that appears in Claim 16 of the '869 Patent.  Dkt. No. 46 at 27.  As to that claim, the parties present essentially the same dispute discussed above as to Claim 15 of the '869 Patent, and the Court here reaches the same conclusion for the same reasons.  The Court thus finds that the preamble of Claim 16 (which depends from Claim 15) is not limiting, and therefore no issue arises as to whether Claim 16 is an improper mixed method-apparatus claim.  The contrary opinion of Defendant's expert is unpersuasive.  *See* Dkt. No. 46, Ex. A, Dec. 5, 2023 Thuraisingham Decl. at ¶ 135.

Defendant does not specifically address the other above-identified terms, so Defendant has not met its burden to show indefiniteness, particularly when considering that the phrases at issue appear in the preambles rather than in the bodies of the claims.

The Court therefore hereby expressly rejects Defendant's assertions of indefiniteness. Defendant presents no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes the above-identified terms to have their **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

**M.  "a copy process for creating a copy of the immutable informational object" (Term No. 32)**

| "a copy process for creating a copy of the immutable informational object" ('000 Patent, Claim 8) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary meaning. Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 11; *id.*, Ex. B at 15; Dkt. No. 56, Ex. A at 116.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's constructions of constituent terms recited therein)."

(1)  The Parties' Positions

Plaintiff argues that "[w]hile the language is functional, that is permissible in a system claim so long as there is no uncertainty about when infringement would occur," and "infringement plainly occurs when a system is created that can perform the claimed function of a 'copy process for creating a copy of the immutable informational object.'"  Dkt. No. 45 at 16–17.

Defendant responds that "[b]ecause the claim is directed to *system components* and includes a separate 'copy process'—i.e., *method*—that must be performed, a POSITA could not determine with reasonable certainty when the claim is infringed, rendering the term indefinite."  Dkt. No. 46 at 25.

Plaintiff replies that Defendant's argument fails because "the permissible functional language is explicitly tied to structure."  Dkt. No. 48 at 10.

At the March 8, 2024 hearing, the parties presented oral arguments as to this term.

(2)  Analysis

A single patent may include claims directed to one or more of the classes of patentable subject matter, but no single claim may cover more than one subject matter class.  *IPXL Holdings*[*, LLC v. Amazon.com, Inc.*], 430 F.3d [1377,] 1384 [(Fed. Cir. 2005)] (holding indefinite a claim covering both an apparatus and a method of using that apparatus).

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008); *see H-W Tech, L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1335 (Fed. Cir. 2014) (finding claim indefinite because "it is unclear when infringement occurs").

Here, Claim 8 of the '000 Patent recites (emphasis added):

8.  A common point authoring system for maintaining data for use by authoring and accessing members to track uniquely identified products, comprising:
   . . .
   an informational object offertory server for enabling members identified in the offer data to access and change data corresponding to data that is contained in the immutable informational object to an extent and for a duration defined by permissions set by the authorized authoring member in the offer data, comprising:
   > *a copy process for creating a copy of the immutable informational object*,
   > an informational object editor for enabling an identified accessing member to revise data contained in the copy of the [] immutable informational object to the extent and for the duration defined by the permissions, and
   > an informational object accessing member authoring server for relating the copy of the immutable informational object, containing the revised data, to the immutable informational object.

This recital of "a copy process" is "permissible functional language used to describe capabilities of the" recited server.  *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1315 (Fed. Cir. 2017); *see Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008); *see also UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, 816 F.3d 816, 827 (Fed. Cir. 2016).  The opinions of Defendant's expert to the contrary are unpersuasive.  Dkt.

No. 46, Ex. A, Dec. 5, 2023 Thuraisingham Decl. at ¶¶ 156 & 157.  At the March 8, 2024 hearing, Defendant argued that it is unclear what this purported capability would be a capability *of*, but the claim on its face recites this as a capability of the "informational object offertory server."

The Court therefore hereby expressly rejects Defendant's indefiniteness argument. Defendant presents no alternative proposed construction, and no further construction is necessary. The Court accordingly hereby construes **"a copy process for creating a copy of the immutable informational object"** to have its **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

**N.  "mapping associating the unique identifier" (Term No. 37)**

| "mapping associating the unique identifier" ('000 Patent, Claim 11) ||
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary meaning. <br><br> Not indefinite. | Indefinite |

Dkt. No. 38, Ex. A at 11; *id.*, Ex. B at 15; Dkt. No. 56, Ex. A at 118.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's constructions of constituent terms recited therein)."

(1)  The Parties' Positions

Plaintiff argues that this term "is permissible functional language that does not create any uncertainty about when infringement would occur."  Dkt. No. 45 at 17.

Defendant responds that whereas Claim 11 of the '000 Patent is a "system" claim, the "mapping" limitation requires creating an informational object, which thus improperly requires performance of a method step within a system claim.  Dkt. No. 46 at 26.

Plaintiff replies that Defendant's argument fails because "the permissible functional language is explicitly tied to structure."  Dkt. No. 48 at 10.

At the March 8, 2024 hearing, the parties presented oral arguments as to this term.

(2)  Analysis

Claim 11 of the '000 Patent recites (emphasis added):

11.   The common point authoring system of claim 8 wherein the authorized authoring member creates an informational object, the authoring server further comprises:
        mapping associating the unique identifier assigned to the created immutable informational object with the unique identifiers that correspond to a selected set of the plurality of data elements.

The parties here present essentially the same dispute discussed above as to Claim 8 of the '000 Patent, and the Court here reaches the same conclusion for the same reasons.

The Court thus finds that "mapping associating . . ." is "permissible functional language used to describe capabilities of the" recited server.  *MasterMine*, 874 F.3d at 1315; *see Microprocessor Enhancement*, 520 F.3d at 1375.  Plaintiff's expert is persuasive that "mapping," in the context of this claim, can be understood as a noun rather than as a verb.  Dkt. No. 45, Ex. H, Dec. 5, 2023 Garlick Decl. at ¶ 84 ("a 'map,' or 'a mapping,' is a widely used data structure that a PHOSITA would recognize").  The contrary opinions of Defendant's expert are unpersuasive. *See* Dkt. No. 46, Ex. A, Dec. 5, 2023 Thuraisingham Decl. at ¶¶ 146–52.

The Court therefore hereby expressly rejects Defendant's indefiniteness argument. Defendant presents no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes Claim 11 of the '000 Patent to have its **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

**O.  "means for enabling" (Term Nos. 40, 50, 55(a), 61, 70(a))**

| **"means for enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"** ('696 Patent, Claim 1) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"  Structure: "an authentication server ('696 Patent at 2:16–21, 5:55–59, 7:67–8:7, 9:22–31, Fig. 1B), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).  Indefinite. |

| **"authoring client server means for enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"** ('696 Patent, Claim 23) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"  Structure: "an authentication server software module ('696 Patent at 2:16–21, 5:55–59, 7:67–8:7, 9:22–31, Fig. 1B), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).  Indefinite. |

**"means, executing on said processor means, for enabling selected members to create said data elements and informational objects for storage in said memory means"**
**"authoring software means, executing on said processor means, for enabling selected members to create said data elements and informational objects for storage in said memory means"**
('696 Patent, Claims 7, 29)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Function:<br>    "enabling selected members to create said data elements and informational objects for storage in a database"<br><br>Structure:<br>    "an authentication server ('696 Patent at 5:55–59, 7:67–8:7, 9:22–42, Fig. 1B, Fig. 4, Fig. 5), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite. |

**"means for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"**
**"authoring means for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"**
('869 Patent, Claims 1, 3;
'668 Patent, Claim 1)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Function:<br>    "enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"<br><br>Structure:<br>    "an authentication server ('869 Patent at 11:39–12:12, 13:22–27, 18:28–34, 22:1–8, Fig. 1B, Fig. 5, Fig. 19; '668 Patent at 11:30–12:3, 13:10–15, 18:5–12, 21:38–45, Fig. 1B, Fig. 5, Fig. 19), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite. |

| **"means for enabling an authorized authoring member to create data comprising at least one draft data element"** **"draft data element means for enabling an authorized authoring member to create data comprising at least one draft data element"** ('869 Patent, Claim 3; '668 Patent, Claim 1) ||
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "enabling an authorized authoring member to create data comprising a draft data element" Structure: "an authentication server ('869 Patent at 13:22–27, 17:7–14, Fig. 1B, Fig. 4; '668 Patent at 13:10–15, 16:54–62, Fig. 1B, Fig. 4), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Indefinite. |

| **"data element authoring server means for enabling an authorized authoring member to create data comprising at least one draft data element"** ('869 Patent, Claim 22) ||
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "enabling an authorized authoring member to create data comprising a draft data element" Structure: "an authentication server software module ('869 Patent at 13:22–27, 17:7–14, Fig. 1B, Fig. 4), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Indefinite. |

| **"authoring client server means for enabling an authorized authoring member to create data comprising a draft informational object"**<br>('869 Patent, Claims 17, 22) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function:<br>　　"enabling an authorized authoring member to create data comprising a draft informational object"<br><br>Structure:<br>　　"an authentication server ('869 Patent at 13:22–27, 18:28–34, Fig. 1B, Fig. 5), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite. |

Dkt. No. 38, Ex. A at 11–12, 14–15, 17–18, 22–23 & 28; *id.*, Ex. B at 16; Dkt. No. 56, Ex. A at 119 & 129.

　　Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary constructions:

| Term | Preliminary Construction |
|---|---|
| "means for enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"<br><br>('696 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>　　"enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"<br><br>Structure:<br>　　"authentication server 141, and equivalents thereof" |
| "authoring client server means for enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"<br><br>('696 Patent, Claim 23) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>　　"enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"<br><br>Structure:<br>　　"authentication server 141, and equivalents thereof" |
| "means, executing on said processor means, for enabling selected members to create said | This term is governed by 35 U.S.C. § 112(6). |

| | |
|---|---|
| data elements and informational objects for storage in said memory means"<br><br>"authoring software means, executing on said processor means, for enabling selected members to create said data elements and informational objects for storage in said memory means"<br><br>('696 Patent, Claims 7, 29) | Function:<br>    "enabling selected members to create said data elements and informational objects for storage in a database"<br><br>Structure:<br>    "authentication server 141, and equivalents thereof" |
| "means for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"<br><br>"authoring means for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"<br><br>('869 Patent: Claims 1, 3;<br>'668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"<br><br>Structure:<br>    "authentication server 141, and equivalents thereof" |
| "means for enabling an authorized authoring member to create data comprising at least one draft data element"<br><br>"draft data element means for enabling an authorized authoring member to create data comprising at least one draft data element"<br><br>('869 Patent, Claim 3;<br>'668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized authoring member to create data comprising a draft data element"<br><br>Structure:<br>    "authentication server 141, and equivalents thereof" |
| "data element authoring server means for enabling an authorized authoring member to create data comprising at least one draft data element"<br><br>('869 Patent, Claim 22) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized authoring member to create data comprising a draft data element"<br><br>Structure:<br>    "authentication server 141, and equivalents thereof" |
| "authoring client server means for enabling an authorized authoring member to create data comprising a draft informational object"<br><br>('869 Patent, Claims 17, 22) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized authoring member to create data comprising a draft informational object"<br><br>Structure:<br>    "authentication server 141, and equivalents thereof" |

(1)  The Parties' Positions

Plaintiff argues that "the specifications clearly disclose that the structure for performing this function is the authentication server, and equivalents thereof."  Dkt. No. 45 at 18 (citations and footnote omitted).  Plaintiff also submits that, "to the extent that such algorithmic structure is required in addition to the disclosure of the authentication server," "[t]he[] figures and associated descriptions contain algorithmic structure for performing the recited functions of the disputed limitations."  *Id.*

Defendant responds that these terms are indefinite because an algorithm is required and "[t]here is no algorithm expressed in prose, source code, or any other format accompanying any recitation of 'enabling creating.'"  Dkt. No. 46 at 13.

(2)  Analysis

Title 35 U.S.C. § 112(f) (formerly § 112, ¶ 6) provides: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

The parties agree that these are means-plus-function terms governed by 35 U.S.C. § 112, ¶ 6.  The parties dispute whether the specification discloses sufficient corresponding structure.  The specification discloses:

> When a Member accesses the Common Point Authoring system 10 at step 501 and executes the authoring system login process at step 502, the Member's identity is checked by the *authentication server 141* against an authorized Member database 123 at step 503 to ensure that this Member is a Member in good standing and has the authoring Permissions to access the process illustrated in FIG. 5. . . .

> \* \* \* [T]he system advances to step 506 where the Member initiates the authoring process for a Livestock Informational Object by creating an unregistered or draft Livestock Informational Object.

'869 Patent at 18:28–49 (emphasis added); *id.* at 17:7–14 ("the Member's identity is checked at step 503 by the authentication server 141"); *see also* '696 Patent at 8:2–3 (same).

The claimed functions are thus clearly linked to the "authentication server 141." Defendant argues that an algorithm is required. *See, e.g., Aristocrat Techs. v. Int'l. Game Tech.*, 521 F.3d 1328, 1333, 1334–35 (Fed. Cir. 2008) ("description of the embodiments [is] simply a description of the outcome of the claimed functions, not a description of the structure, i.e., the computer programmed to execute a particular algorithm"). The algorithm requirement, however, applies when the corresponding structure is a general-purpose computer. *Id.* Here, the authentication server 141 is a special-purpose structure, and to whatever extent an authentication server 141 could be implemented on a general-purpose computer, the corresponding structure is not merely a general-purpose computer but rather is the particular authentication server 141 as described in the specification. The opinions of Defendant's expert regarding lack of corresponding structure are unpersuasive. *See* Dkt. No. 46, Ex. A, Dec. 5, 2023 Thuraisingham Decl. at ¶¶ 202–31.

As to Defendant's arguments regarding the sufficiency of the disclosures regarding authentication server 141, those arguments perhaps might pertain to issues of enablement or written description but do not present any issue of indefiniteness because the authentication server 141 is a special-purpose structure that is disclosed in the specification and that is clearly linked to the claimed functions.

The *Blackboard* case cited by Defendant does not compel otherwise because the structure proposed in that case was "a server computer with an access control manager and equivalents thereof," and the Federal Circuit stated that the "access control manager" was an "abstraction" of

a function that "is performed by some undefined component of the system." *Blackboard Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009) ("The ACM is essentially a black box that performs a recited function. But how it does so is left undisclosed."). But whereas the proposed structure in *Blackboard* involved general-purpose computers such as a "server computer," the claimed functions in the present case are performed by a special-purpose structure, the "authentication server 141," and the above-cited disclosures provide detail.

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"means for enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"**<br><br>('696 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"<br><br>Structure:<br>    **"authentication server 141, and equivalents thereof"** |
| **"authoring client server means for enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"**<br><br>('696 Patent, Claim 23) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized authoring member to create data comprising at least one of a draft data element and a draft informational object"<br><br>Structure:<br>    **"authentication server 141, and equivalents thereof"** |

| | |
|---|---|
| **"means, executing on said processor means, for enabling selected members to create said data elements and informational objects for storage in said memory means"**<br><br>**"authoring software means, executing on said processor means, for enabling selected members to create said data elements and informational objects for storage in said memory means"**<br><br>('696 Patent, Claims 7, 29) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling selected members to create said data elements and informational objects for storage in a database"<br><br>Structure:<br>    **"authentication server 141, and equivalents thereof"** |
| **"means for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"**<br><br>**"authoring means for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"**<br><br>('869 Patent, Claims 1, 3;<br>'668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"<br><br>Structure:<br>    **"authentication server 141, and equivalents thereof"** |
| **"means for enabling an authorized authoring member to create data comprising at least one draft data element"**<br><br>**"draft data element means for enabling an authorized authoring member to create data comprising at least one draft data element"**<br><br>('869 Patent, Claim 3;<br>'668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized authoring member to create data comprising a draft data element"<br><br>Structure:<br>    **"authentication server 141, and equivalents thereof"** |

| | |
|---|---|
| **"data element authoring server means for enabling an authorized authoring member to create data comprising at least one draft data element"**<br><br>('869 Patent, Claim 22) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"enabling an authorized authoring member to create data comprising a draft data element"<br><br>Structure:<br>**"authentication server 141, and equivalents thereof"** |
| **"authoring client server means for enabling an authorized authoring member to create data comprising a draft informational object"**<br><br>('869 Patent, Claims 17, 22) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"enabling an authorized authoring member to create data comprising a draft informational object"<br><br>Structure:<br>**"authentication server 141, and equivalents thereof"** |

**P.  "wherein said authoring means incorporates . . ." (Term No. 62)**

| **"wherein said authoring means incorporates said at least one draft data element into said draft informational object"**<br>('668 Patent, Claim 1) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Alternatively, plain and ordinary meaning.<br><br>Not indefinite. | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite. |

Dkt. No. 38, Ex. A at 23; *id.*, Ex. B at 37.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's constructions of constituent terms recited therein)."

(1)  The Parties' Positions

Plaintiff argues that this is not a means-plus-function term.  Dkt. No. 45 at 19. Alternatively, Plaintiff argues that "[a]t a minimum, the discussion in the specification around

- 49 -

Figure 5 provides additional algorithmic structure for 'incorporat[ing] said at least one draft data element into said draft informational object." *Id.* (citation omitted).

Defendant responds that there is no disclosed algorithm and that this term is therefore indefinite. Dkt. No. 46 at 24–25.

(2) Analysis

This term refers back to the "authoring means" recited in Claim 1 of the '668 Patent and therefore is not a separate means-plus-function term. The Court therefore rejects Defendant's proposal to separately apply 35 U.S.C. § 112, ¶ 6 to this term. Defendant presents no alternative proposed construction, and no further construction is necessary. The Court therefore hereby construes **"wherein said authoring means incorporates said at least one draft data element into said draft informational object"** to have its **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

**Q. "means for authenticating said at least one draft data element . . ." (Term No. 64)**

| **"means for authenticating said at least one draft data element created by said authorized authoring member"**<br>**"data element authentication means for authenticating said at least one draft data element created by said authorized authoring member"**<br>('869 Patent, Claims 3, 22) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function:<br>    "authenticating at least one draft data element created by the authorized authoring member"<br>Structure:<br>    "an authoring server ('869 Patent at 13:22–27, 17:35–44, 17:65–18:3, Fig. 1B, Fig. 4), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br>Function:<br>    "authenticating said at least one draft data element created by said authorized authoring member"<br>Structure:<br>    "authoring server 143 implementing the steps described at col. 17:35–44 and 17:65–18:6" |

Dkt. No. 38, Ex. A at 23–24; *id.*, Ex. B at 39.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "This term is governed by 35 U.S.C. § 112(6). Function: 'authenticating said at least one draft data element created by said authorized authoring member' / Structure: 'authoring server 143, and equivalents thereof.'"

Plaintiff argues that "to the extent that algorithmic structure is required in addition to the disclosure of the authoring server, the patents provide that additional structure." Dkt. No. 45 at 20.

Defendant's response brief does not specifically address these terms. *See* Dkt. No. 46.

These terms are not addressed in the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 56). At the March 8, 2024 hearing, Defendant noted that some of the Court's preliminary constructions address terms that are no longer at issue, and Defendant cited the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (*id.*). The Court therefore concludes that these terms are no longer in dispute and need not be construed. The Court accordingly does not further address these terms.

**R.  "authenticating means for enabling an authorized individual to authenticate said draft [data element / informational object]" (Term Nos. 56, 63)**

| "authenticating means for enabling an authorized individual to authenticate said draft informational object created by said authorized authoring member" ('668 Patent, Claim 1) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: <br> "enabling an authorized individual to authenticate said draft informational object created by said authorized authoring member" <br><br> Structure: <br> "an authoring server ('668 Patent at 13:10–15, 19:24–26, Fig. 1B, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). <br><br> Indefinite. |

| "data element authenticating means for enabling an authorized individual to authenticate said draft data element created by said authorized authoring member" ('668 Patent, Claim 1) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: <br> "enabling an authorized individual to authenticate said draft data element created by said authorized authoring member" <br><br> Structure: <br> "an authoring server ('668 Patent at 13:10–15, 17:14–23, 17:44–49, Fig. 1B, Fig. 4), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). <br><br> Indefinite. |

Dkt. No. 38, Ex. A at 19 & 23; *id.*, Ex. B at 31 & 38.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction:

| Term | Preliminary Construction |
|---|---|
| "authenticating means for enabling an authorized individual to authenticate said draft informational object created by said authorized authoring member"<br><br>('668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized individual to authenticate said draft informational object created by said authorized authoring member"<br><br>Structure:<br>    "authoring server 143, and equivalents thereof" |
| "data element authenticating means for enabling an authorized individual to authenticate said draft data element created by said authorized authoring member"<br><br>('668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized individual to authenticate said draft data element created by said authorized authoring member"<br><br>Structure:<br>    "authoring server 143, and equivalents thereof" |

(1)  The Parties' Positions

Plaintiff argues that "the specification discloses that the authoring server checks, or authenticates, the draft informational object for proper content, format and permissions," and "a PHOSITA would understand that this authentication function could be performed through the authoring server under the direction of an authorized individual."  Dkt. No. 45 at 20–21 (citations omitted).

Defendant responds that there is no clear linkage between the "authoring server" and the functions here at issue, and "even assuming the specification does disclose the 'authoring server' software module as structure for performing the function 'enabling an authorized individual to authenticate[]' (it does not)[,] there is still no algorithm disclosed."  Dkt. No. 46 at 18.

(2)  Analysis

The parties agree that these are means-plus-function terms governed by 35 U.S.C. § 112, ¶ 6, and the parties present no dispute regarding the claimed function.  The parties dispute whether

the specification discloses a corresponding structure, whether an algorithm is required, and whether an algorithm is disclosed.

> The specification discloses:

> Therefore, at step 403, the *authoring server 143* of the Common Point Authoring system 10 reviews the draft Data Element to determine whether the language contained therein is in *approved format and content*, using a content parsing review process to compare the language of the draft Data Element with a dictionary of approved terms. In addition, where the selected category accepts image data, the image data is reviewed for content and coding where appropriate. The format similarly is checked to ensure that adequate and thorough information is provided. If the content check discerns any flaws in the draft Data Element, at step 406, a message is returned to the Member rejecting the draft Data Element, with appropriate notation relating to the reason for rejection.

'668 Patent at 17:14–27 (emphasis added); *see id.* at 19:24–26 ("At step 602, the authoring server 143 checks the unregistered Livestock Informational Object for proper content, format, and Permissions.").

The specification thus links the claimed function of "enabling an authorized individual to authenticate said draft [data element / information object] created by said authorized authoring member" to the "authoring server 143."  Defendant argues that the absence of any reference to an "an authorized individual" in the above-cited disclosures means that there is no clear linkage to the claimed functions, but the linkage to the authenticating function is sufficient, and also the specification includes extensive disclosures regarding a "Subscriber" or "Member" in relation to "authoring server 143."  *See, e.g.,* '668 Patent at 17:14–27 (quoted above).  Finally, for the same reasons discussing above regarding the "authenticating server 141" as to the "means for enabling" terms, the "authoring server 143" is a special-purpose structure, and therefore no algorithm is required.  In particular, this structure is the particular "authorizing server 143" as described in the specification.  The opinions of Defendant's expert to the contrary are unpersuasive.  *See* Dkt. No. 46, Ex. A, Dec. 5, 2023 Thuraisingham Decl. at ¶¶ 192–99.

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"authenticating means for enabling an authorized individual to authenticate said draft informational object created by said authorized authoring member"**<br><br>('668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"enabling an authorized individual to authenticate said draft informational object created by said authorized authoring member"<br><br>Structure:<br>**"authoring server 143, and equivalents thereof"** |
| **"data element authenticating means for enabling an authorized individual to authenticate said draft data element created by said authorized authoring member"**<br><br>('668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"enabling an authorized individual to authenticate said draft data element created by said authorized authoring member"<br><br>Structure:<br>**"authoring server 143, and equivalents thereof"** |

**S.  "means for comparing content . . . with a set of predetermined rules" (Term No. 51)**

| "means for comparing content of at least one of said draft data element and said informational object with a set of predetermined rules" "content conforming means for comparing content of at least one of said draft data element and said informational object with a set of predetermined rules" ('696 Patent, Claims 8, 30) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "comparing content of the draft data element and the informational object with a set of predetermined rules and registering the draft data element and draft informational object if its content satisfies the predetermined rules" Structure: "an authoring server ('696 Patent at 5:55–59, 8:40–43, 8:58–63, 10:24–26, Fig. 1B, Fig. 4, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Indefinite. In the alternative, if the Court finds this term not to be indefinite, IBM proposes the following function and structure: Function: "comparing content of at least one of said draft data element and said informational object with a set of predetermined rules" Structure: "authoring client software module executing on the terminal device T1 implementing the steps of col. 8:10–25 and 9:40–42 (Fig. 4 step 402 and Fig. 5 step 506)" |

Dkt. No. 38, Ex. A at 15; *id.*, Ex. B at 26.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "This term is governed by 35 U.S.C. § 112(6). / Function: 'comparing content of the draft data element and the informational object with a set of predetermined rules and registering the draft data element and draft informational object if its content satisfies the predetermined rules' / Structure: 'authoring server 143, and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff argues that the authoring server performs the claimed functions, and "if algorithmic structure is required in addition to the authoring server, the patent provide[s] figures (Figs. 4 and 6) and associated descriptions that sufficiently disclose it."  Dkt. No. 45 at 21.

Defendant responds that "the Asserted Patents do not disclose any algorithmic structure for performing these functions."  Dkt. No. 46 at 22.

(2)  Analysis

These terms present substantially the same dispute as the "authenticating means" terms addressed above, and the Court likewise finds here that the "authoring server 143" is the corresponding structure and that no algorithm is required.  *See* '696 Patent at 8:27–43 ("authoring server 143 . . . reviews the draft data element to determine whether the language contained therein is in approved format and content, using a content parsing review process to compare the language of the draft data element with a dictionary of approved terms"); *see also id.* at 8:58–63 ("the draft data element is compared by the authoring server 143 with all previously registered data elements of this category to ensure that the draft data element is not duplicative of a prior data element"), 10:26–36 ("generates a unique informational object identification and substitutes this for the filename created by the member") & Fig. 6 ("AUTHORING SERVER CHECKS INFORMATIONAL OBJECT" and "AUTHORING SERVER SUBSTITUTES NON-UNIQUE INFORMATIONAL OBJECT FILENAME WITH UNIQUE REGISTERED INFORMATIONAL OBJECT ID").

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"means for comparing content of at least one of said draft data element and said informational object with a set of predetermined rules"**<br><br>**"content conforming means for comparing content of at least one of said draft data element and said informational object with a set of predetermined rules"**<br><br>('696 Patent, Claims 8, 30) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "comparing content of the draft data element and the informational object with a set of predetermined rules and registering the draft data element and draft informational object if its content satisfies the predetermined rules"<br><br>Structure:<br>    **"authoring server 143, and equivalents thereof"** |

**T.  "means for assigning a unique identifier" (Term No. 47)**

| **"means for assigning a unique identifier to said created informational object"**<br>**"informational object registering means for assigning a unique identifier to said created informational object"**<br>('696 Patent, Claims 4, 26) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function:<br>    "assigning a unique identifier to the created informational object"<br><br>Structure:<br>    "an authoring server ('696 Patent at 5:55–59, 10:26–30, Fig. 1B, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite.<br><br>In the alternative, if the Court finds this term not to be indefinite, IBM proposes the following function and structure:<br><br>Function:<br>    "assigning a unique identifier to said created informational object"<br><br>Structure:<br>    "authoring server 143 implementing the steps described at col. 10:26–30 (Step 603 of Fig. 6)" |

Dkt. No. 38, Ex. A at 14; *id.*, Ex. B at 23.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "This term is governed by 35 U.S.C. § 112(6). / Function: 'assigning a unique identifier to said created informational object' / Structure: 'authoring server 143, and equivalents thereof.'"

Plaintiff argues that "[t]he parties . . . agree that the authoring server is at least part of the structure for performing the function," and "[t]o the extent additional algorithmic structure is required, it is present as illustrated and discussed in Figures 4 and 6 and corresponding discussion." Dkt. No. 45 at 21.

Defendant's response brief does not specifically address these terms. *See* Dkt. No. 46.

These terms are not addressed in the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 56).  At the March 8, 2024 hearing, Defendant noted that some of the Court's preliminary constructions address terms that are no longer at issue, and Defendant cited the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (*id.*).  The Court therefore concludes that these terms are no longer in dispute and need not be construed.  The Court accordingly does not further address these terms.

**U.  "means for converting" (Term Nos. 41, 58(a), 59, 65, 68)**

| "means for converting said authenticated at least one of a draft data element and a draft informational object created by said authorized authoring member to a corresponding immutable at least one of a data element and an informational object" "authoring server means for converting said at least one of a draft data element and a draft informational object created by said authorized authoring member to a corresponding at least one of a data element and an informational object" ('696 Patent, Claims 1, 23) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "converting an authenticated draft data element and a draft informational object created by an authorized authoring member to a corresponding immutable data element and immutable informational object" Structure: "an authoring server ('696 Patent at 5:55–59, 8:43–49, 8:66–9:5, 10:26–36, Fig. 1B, Fig. 4, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Indefinite. |

| **"means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"**<br>**"completion means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"**<br>('869 Patent, Claim 1;<br>'668 Patent, Claim 1) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function:<br>    "converting an authenticated draft informational object created by an authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>Structure:<br>    "an authoring server ('869 Patent at 13:22–27, 19:52–62, Fig. 1B, Fig. 6; '668 Patent at 13:10–15, 19:26–35, Fig. 1B, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite. |

| **"means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"** **"authoring server means for convening said draft informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"** ('869 Patent, Claims 3, 17) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| This should be read to say "converting" rather than "convening." Drafting error. Function: "converting an authenticated draft informational object created by an authorized authoring member to a corresponding immutable informational object, which is identified by a unique identifier" Structure: "an authoring server ('869 Patent at 13:22–27, 19:52–62, Fig. 1B, Fig. 2, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Indefinite. |

| **"wherein said completion means converts said authenticated at least one draft data element to a corresponding immutable draft data element which is identified by a unique identifier"** ('668 Patent, Claim 1) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "converting an authenticated draft data element to a corresponding immutable data element, which is identified by a unique identifier" Structure: "an authoring server ('668 Patent at 13:10–15, 17:29–35, 17:44–49, Fig. 1B, Fig. 4), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Indefinite. |

| **"means for convening said authenticated at least one draft data element created by said authorized authoring member to a corresponding immutable at least one data element which is identified by a unique identifier"** <br> ('869 Patent, Claim 3) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| This should be read to say "converting" rather than "convening." Drafting error. <br><br> Function: <br>     "converting an authenticated draft data element created by an authorized authoring member to a corresponding immutable data element, which is identified by a unique identifier" <br><br> Structure: <br>     "an authoring server ('869 Patent at 13:22–27, 17:50–56, 18:6–12, Fig. 1B), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). <br><br> Indefinite. |

Dkt. No. 48, Ex. A at 12–13, 20, 21–22, 24 & 27; *id.*, Ex. B at 17, 33–34, 39 & 42; Dkt. No. 56, Ex. A at 120 & 136.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary constructions:

| Term | Preliminary Construction |
|---|---|
| "means for converting said authenticated at least one of a draft data element and a draft informational object created by said authorized authoring member to a corresponding immutable at least one of a data element and an informational object"<br><br>"authoring server means for converting said at least one of a draft data element and a draft informational object created by said authorized authoring member to a corresponding at least one of a data element and an informational object"<br><br>('696 Patent, Claims 1, 23) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "converting said [authenticated] at least one of a draft data element and a draft informational object created by said authorized authoring member to a corresponding immutable at least one of a data element and an informational object"<br><br>Structure:<br>    "authoring server 143, and equivalents thereof" |
| "means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>"completion means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>('869 Patent, Claim 1;<br>'668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>Structure:<br>    "authoring server 143, and equivalents thereof" |
| "means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>"authoring server means for convening said draft informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>('869 Patent, Claims 3, 17) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "converting said [authenticated/draft] informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>Structure:<br>    "authoring server 143, and equivalents thereof" |

| | |
|---|---|
| "wherein said completion means converts said authenticated at least one draft data element to a corresponding immutable draft data element which is identified by a unique identifier"<br><br>('668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "converting said authenticated at least one draft data element to a corresponding immutable draft data element which is identified by a unique identifier"<br><br>Structure:<br>    "authoring server 143, and equivalents thereof" |
| "means for convening said authenticated at least one draft data element created by said authorized authoring member to a corresponding immutable at least one data element which is identified by a unique identifier"<br><br>('869 Patent, Claim 3) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "converting said authenticated at least one draft data element created by said authorized authoring member to a corresponding immutable at least one data element which is identified by a unique identifier"<br><br>Structure:<br>    "authoring server 143, and equivalents thereof" |

(1)  The Parties' Positions

Plaintiff argues that "the specifications clearly disclose that the structure for performing this function is the authoring server, and equivalents thereof," and, "to the extent that such algorithmic structure is required in addition to the disclosure of the authoring server," "[t]he[] figures and associated descriptions contain algorithmic structure for performing the recited functions of the disputed limitations."  Dkt. No. 45 at 22 (citations omitted).

Defendant responds that "[t]hese terms are indefinite because there is no structure that is clearly linked to a 'converting' function," and "to the extent the 'authoring server' Pardalis identifies is the structure for performing 'means for converting' to an 'immutable' form, there is no algorithm disclosed that would enable the authoring server to perform that function."  Dkt. No. 46 at 15–16 (citation omitted).

At the March 8, 2024 hearing, the parties presented oral arguments as to these terms.

(2)  Analysis

The specification discloses:

[A]t step 407 the authoring server 143 . . . generates a unique registered data element identifier and assigns this to the draft data element and at step 408, the informational object authoring and distribution system 10 translates the data element into other languages and appends a language identifier to each translation of the data element.

* * *

At step 602, the authoring server 143 checks the unregistered informational object for proper content, format and permissions. If the content and format are proper, at step 603 the authoring server 143 of the informational object authoring and distribution system 10 generates a unique informational object identification and substitutes this for the filename created by the member. At step 604, the *authoring server 143* of the informational object authoring and distribution system 10 date and time stamps the informational object to complete the registration process and *stores the registered informational object in immutable form* in the informational object database 125 at step 605.

'696 Patent at 8:66–9:5 & 10:24–36 (emphasis added); *see id.* at 8:27–49 & 8:58–9:9; *see also*

'869 Patent at 13:64–14:1, 18:6–16 ("this newly created Data Element is permanently added to the

registered Data Element database 124"), 19:52–62, Figs. 2, 4 & 6.

The specifications thus disclose that converting to "immutable" form is performed by

"authoring server 143."  As to Defendant's argument that identifying only a server will lead to

uncertainty and that an algorithm is required, the authoring server 143 is a special-purpose

structure that is discussed throughout the specifications.  Further, to whatever extent an authoring

server 143 could be implemented on a general-purpose computer, the corresponding structure is

not merely a general-purpose computer but rather is the particular authoring server 143 disclosed

in the specification.  The opinions of Defendant's expert to the contrary are unpersuasive.  *See*

Dkt. No. 46, Dec. 5, 2023 Thuraisingham Decl. at ¶¶ 160–173.  Finally, as discussed at the March

8, 2024 hearing, Defendant identifies no case that has found "server" to be a nonce term.

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"means for converting said authenticated at least one of a draft data element and a draft informational object created by said authorized authoring member to a corresponding immutable at least one of a data element and an informational object"**<br><br>**"authoring server means for converting said at least one of a draft data element and a draft informational object created by said authorized authoring member to a corresponding at least one of a data element and an informational object"**<br><br>('696 Patent, Claims 1, 23) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "converting said [authenticated] at least one of a draft data element and a draft informational object created by said authorized authoring member to a corresponding immutable at least one of a data element and an informational object"<br><br>Structure:<br>    **"authoring server 143, and equivalents thereof"** |
| **"means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"**<br><br>**"completion means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"**<br><br>('869 Patent: Claim 1;<br>'668 Patent: Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>Structure:<br>    **"authoring server 143, and equivalents thereof"** |

| | |
|---|---|
| **"means for converting said authenticated informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"**<br><br>**"authoring server means for convening said draft informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"**<br><br>('869 Patent, Claims 3, 17) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"converting said [authenticated/draft] informational object created by said authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>Structure:<br>**"authoring server 143, and equivalents thereof"** |
| **"wherein said completion means converts said authenticated at least one draft data element to a corresponding immutable draft data element which is identified by a unique identifier"**<br><br>('668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"converting said authenticated at least one draft data element to a corresponding immutable draft data element which is identified by a unique identifier"<br><br>Structure:<br>**"authoring server 143, and equivalents thereof"** |
| **"means for convening said authenticated at least one draft data element created by said authorized authoring member to a corresponding immutable at least one data element which is identified by a unique identifier"**<br><br>('869 Patent, Claim 3) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"converting said authenticated at least one draft data element created by said authorized authoring member to a corresponding immutable at least one data element which is identified by a unique identifier"<br><br>Structure:<br>**"authoring server 143, and equivalents thereof"** |

**V.   "means . . . for registering said at least one of said draft data element and said informational object" (Term No. 52)**

| "means, responsive to said content satisfying said rules, for registering said at least one of said draft data element and said informational object" "conversion means, responsive to said content satisfying said rules, for registering said at least one of said draft data element and said informational object" ('696 Patent, Claims 8, 30) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "comparing content of the draft data element and the informational object with a set of predetermined rules and registering the draft data element and draft informational object if its content satisfies the predetermined rules" Structure: "an authoring server ('696 Patent at 5:55–59, 8:43–57, 8:65–9:9, 10:26–36, Fig. 1B, Fig. 4, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Indefinite. |

Dkt. No. 38, Ex. A at 15–16; *id.*, Ex. B at 27.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "This term is governed by 35 U.S.C. § 112(6). / Function: 'comparing content of the draft data element and the informational object with a set of predetermined rules and registering the draft data element and draft informational object if its content satisfies the predetermined rules' / Structure: 'authoring server 143, and equivalents thereof.'"

(1)  The Parties' Positions

Plaintiff argues that "the specification does disclose that the structure for performing this function is the authoring server and equivalents thereof," and, "[i]f required, th[e] description

provides algorithmic structure for performing the recited functions." Dkt. No. 45 at 23 (citations omitted).

Defendant responds that "the Asserted Patents do not disclose any algorithmic structure for performing these functions." Dkt. No. 46 at 22.

(2) Analysis

These terms present substantially the same dispute as the "authenticating means" terms addressed above, and the Court likewise finds here that the "authoring server 143" is the corresponding structure and that no algorithm is required. *See* '696 Patent at 8:27–9:2 ("the authoring server 143 . . . generates a unique registered data element identifier and assigns this to the draft data element"), 10:17–36 ("the authoring server 143 . . . date and time stamps the informational object to complete the registration process and stores the registered informational object in immutable form in the informational object database 125") & Fig. 6.

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"means, responsive to said content satisfying said rules, for registering said at least one of said draft data element and said informational object"**<br><br>**"conversion means, responsive to said content satisfying said rules, for registering said at least one of said draft data element and said informational object"**<br><br>('696 Patent, Claims 8, 30) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "comparing content of the draft data element and the informational object with a set of predetermined rules and registering the draft data element and draft informational object if its content satisfies the predetermined rules"<br><br>Structure:<br>    **"authoring server 143, and equivalents thereof"** |

## W.  "means for writing" (Term Nos. 42, 54, 60, 69)

<table>
<tr>
<td colspan="2"><strong>"means for writing said created immutable at least one of a data element and an informational object into a memory for use by said first and said second means for maintaining"</strong><br>('696 Patent, Claim 1)</td>
</tr>
<tr>
<td><strong>Plaintiff's Proposed Construction</strong></td>
<td><strong>Defendant's Proposed Construction</strong></td>
</tr>
<tr>
<td>Function:<br>    "writing the created immutable data element and the created immutable informational object into a memory for use by said first and said second means for maintaining"<br><br>Structure:<br>    "an authoring server ('696 Patent at 5:55–59, 9:6–9, 10:30–36, Fig. 1B, Fig. 4, Fig. 6), and equivalents thereof"</td>
<td>This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite.<br><br>In the alternative, if the Court finds this term not to be indefinite, IBM proposes the following function and structure:<br><br>Function:<br>    "writing said created immutable at least one of a data element and an informational object into a memory for use by said first and said second means for maintaining"<br><br>Structure:<br>    "authoring server 143 implementing the steps described at col. 9:6–9 and 10:30–36"</td>
</tr>
</table>

| **"database management means for writing said created at least one of a data element and an informational object into a corresponding one of said data element database means and said informational object database means"** ('696 Patent, Claim 23) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function:<br>    "writing the created immutable data element into a first database and writing the created immutable informational object into the second database"<br><br>Structure:<br>    "an authoring server ('696 Patent at 5:55–59, 9:6–9, 10:30–36, Fig. 1B, Fig. 4, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite.<br><br>Alternatively:<br><br>Function:<br>    "writing said created at least one of a data element and an informational object into a corresponding one of said data element database means and said informational object database means"<br><br>Structure:<br>    "authoring server 143 implementing the steps described at col. 9:6–9 and 10:30–36" |

**"means for writing said created immutable informational object into a memory for use by authorized accessing members"**
**"means for writing said created immutable informational object into a memory for use by authorized accessing members"**
**"database management means for writing said created immutable informational object into a memory for use by authorized accessing members"**
('869 Patent, Claims 1, 3;
'668 Patent, Claim 1)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Function: <br> "writing the created immutable informational object into a memory for use by authorized accessing members" <br><br> Structure: <br> "an authoring server ('869 Patent at 13:22–27, 19:56–62, Fig. 1B, Fig. 6; '668 Patent at 13:10–15, 19:30–35, Fig. 1B, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). <br><br> Indefinite. <br><br> In the alternative, if the Court finds this term not to be indefinite, IBM proposes the following function and structure: <br><br> Function: <br> "writing said created immutable informational object into a memory for use by authorized accessing members" <br><br> Structure: <br> "authoring server 143 implementing the steps described at col. 9:6–9 and 10:30–36" |

| **"database management means for writing said created immutable informational object into an informational object database"** **"database management means for writing said created immutable informational object into said informational object database means"** ('869 Patent, Claims 17, 22) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "writing the created immutable informational object into an informational object database" Structure: "an authoring server ('869 Patent at 13:9–27, 19:56–62, Fig. 1B, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Indefinite. In the alternative, if the Court finds this term not to be indefinite, IBM proposes the following function and structure: Function: "writing said created immutable informational object into an informational object database" Structure: "authoring server 143 implementing the steps described at col. 9:6–9 and 10:30–36" |

Dkt. No. 38, Ex. A at 13, 17, 22 & 27–28; *id.*, Ex. B at 18, 29, 35 & 43; Dkt. No. 56, Ex. A at 140.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with

the following preliminary constructions:

| Term | Preliminary Construction |
|---|---|
| "means for writing said created immutable at least one of a data element and an informational object into a memory for use by said first and said second means for maintaining"<br><br>('696 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"writing said created immutable at least one of a data element and an informational object into a memory for use by said first and said second means for maintaining"<br><br>Structure:<br>"authoring server 143, and equivalents thereof" |
| "database management means for writing said created at least one of a data element and an informational object into a corresponding one of said data element database means and said informational object database means"<br><br>('696 Patent, Claim 23) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"writing said created at least one of a data element and an informational object into a corresponding one of said data element database means and said informational object database means"<br><br>Structure:<br>"authoring server 143, and equivalents thereof" |
| "means for writing said created immutable informational object into a memory for use by authorized accessing members"<br><br>"means for writing said created immutable informational object into a memory for use by authorized accessing members"<br><br>"database management means for writing said created immutable informational object into a memory for use by authorized accessing members"<br><br>('869 Patent, Claims 1, 3;<br>'668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"writing said created immutable informational object into a memory for use by authorized accessing members"<br><br>Structure:<br>"authoring server 143, and equivalents thereof" |
| "database management means for writing said created immutable informational object into an informational object database"<br><br>"database management means for writing said created immutable informational object into said informational object database means"<br><br>('869 Patent, Claims 17, 22) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"writing said created immutable informational object into an informational object database"<br><br>Structure:<br>"authoring server 143, and equivalents thereof" |

(1)  The Parties' Positions

Plaintiff argues that no algorithm is necessary because "writing data into memory is a simple function that can be achieved by any general-purpose computer without special programming."  Dkt. No. 45 at 24 (citing *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1315 (Fed. Cir. 2011)).

Defendant responds that "while Pardalis identifies the 'authoring server' as the 'means for writing' (Br. at 24), no algorithms are disclosed to perform that function."  Dkt. No. 46 at 21. Defendant argues that the disclosures cited by Plaintiff "provide nothing more than a restatement of the claimed function," and "[t]here is no algorithm that explains how a data element and/or informational object are written to a database *to ensure their immutability*."  *Id.*

(2)  Analysis

These terms present substantially the same dispute as the "authenticating means" terms addressed above, and the Court likewise finds here that the "authoring server 143" is the corresponding structure and that no algorithm is required.  *See* '869 Patent at 19:56–62; *see also* '668 Patent at 19:30–35.

Moreover, "writing" a "data element" (or an "object") into a "memory" (or a "database") is a function that can be performed by a general-purpose computer without special programming, which is an additional reason that no algorithm is required.  *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1315 (Fed. Cir. 2011) ("Absent a possible narrower construction of the terms 'processing,' 'receiving,' and 'storing,' . . . those functions can be achieved by any general-purpose computer without special programming.  As such, it was not necessary to disclose more structure than the general purpose processor that performs those functions.") (footnote omitted).

Defendant argues that "writing" is being used not in a "general sense" but rather "for a narrower, more specialized function" (Dkt. No. 46 at 21 n.18), but whereas these claims set forth various limitations in relation to the "writing," the "writing" itself has not been shown to be anything different than a typical function of a general-purpose computer. The testimony of Plaintiff's expert that "'[s]torage' is a big word," cited by Defendant, does not compel otherwise. Dkt. No. 46, Ex. C, Jan. 8, 2024 Garlick dep. at 42:15–20.

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"means for writing said created immutable at least one of a data element and an informational object into a memory for use by said first and said second means for maintaining"**<br><br>('696 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"writing said created immutable at least one of a data element and an informational object into a memory for use by said first and said second means for maintaining"<br><br>Structure:<br>**"authoring server 143, and equivalents thereof"** |
| **"database management means for writing said created at least one of a data element and an informational object into a corresponding one of said data element database means and said informational object database means"**<br><br>('696 Patent, Claim 23) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>"writing said created at least one of a data element and an informational object into a corresponding one of said data element database means and said informational object database means"<br><br>Structure:<br>**"authoring server 143, and equivalents thereof"** |

| | |
|---|---|
| **"means for writing said created immutable informational object into a memory for use by authorized accessing members"** <br><br> **"means for writing said created immutable informational object into a memory for use by authorized accessing members"** <br><br> **"database management means for writing said created immutable informational object into a memory for use by authorized accessing members"** <br><br> ('869 Patent, Claims 1, 3; '668 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6). <br><br> Function: <br> "writing said created immutable informational object into a memory for use by authorized accessing members" <br><br> Structure: <br> **"authoring server 143, and equivalents thereof"** |
| **"database management means for writing said created immutable informational object into an informational object database"** <br><br> **"database management means for writing said created immutable informational object into said informational object database means"** <br><br> ('869 Patent, Claims 17, 22) | This term is governed by 35 U.S.C. § 112(6). <br><br> Function: <br> "writing said created immutable informational object into an informational object database" <br><br> Structure: <br> **"authoring server 143, and equivalents thereof"** |

## X.  "means for storing . . ." and "means for maintaining" (Term Nos. 49, 67(a))

<table>
<tr><td colspan="2" align="center"><strong>"processor means and associated memory means accessible via a data communication connection for storing a plurality of said data elements and said informational objects"</strong><br>('696 Patent, Claims 6, 28)</td></tr>
<tr><td><strong>Plaintiff's Proposed Construction</strong></td><td><strong>Defendant's Proposed Construction</strong></td></tr>
<tr><td>Function:<br>"storing a plurality of the data elements and informational objects using a processor means and associated memory means that can be accessed through a data communication connection"<br><br>Structure:<br>"a first and a second database ('696 Patent at 5:35–55, 9:6–9, 10:30–36, Fig. 1A, Fig. 1B), and equivalents thereof"</td><td>This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite.<br><br>In the alternative, if the Court finds this term not to be indefinite, IBM proposes the following function and structure:<br><br>Function:<br>"storing a plurality of said data elements and said informational objects"<br><br>Structure:<br>"registered data element database 124 and/or registered informational object database 125"</td></tr>
</table>

**"means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"**
**"informational object database means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"**
**"memory means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"**
**"protection means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"**
('869 Patent, Claims 4, 17, 22, 23;
'668 Patent, Claim 4)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Function: <br><br> "maintaining a set of data that defines an informational object comprised of a plurality of uniquely-identified data elements in a read-only mode" <br><br> Structure: <br><br> "an informational object database ('869 Patent at 13:9–20, 13:62–14:10, 19:56–62, Fig. 1B, Fig. 2, Fig. 6; '668 Patent at 12:64–13:7; 13:49–64, 19:30–35; Fig. 1B, Fig. 2, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). <br><br> Indefinite. <br><br> In the alternative, if the Court finds this term not to be indefinite, IBM proposes the following function and structure: <br><br> Function: <br><br> "maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements" <br><br> Structure: <br><br> "registered informational object database 125" |

Dkt. No. 38, Ex. A at 14 & 25; *id.*, Ex. B at 24 & 41.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction:

| Term | Preliminary Construction |
|---|---|
| "processor means and associated memory means accessible via a data communication connection for storing a plurality of said data elements and said informational objects"<br><br>('696 Patent, Claims 6, 28) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "storing a plurality of said data elements and said informational objects"<br><br>Structure:<br>    "registered data element database 124 and registered informational object database 125; and equivalents thereof" |
| "means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>"informational object database means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>"memory means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>"protection means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>('869 Patent, Claims 4, 17, 22, 23; '668 Patent, Claim 4) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "maintaining in a read-only mode, a set of data that defines an informational object"<br><br>Structure:<br>    "registered informational object database 125, and equivalents thereof" |

### (1)  The Parties' Positions

Plaintiff argues that "[t]he function for each of these terms is writing an immutable data element or an informational object into a memory, and the specifications disclose that the structure

for performing that structure is the authoring server that adds, or writes, the created data element to the registered data element database."  Dkt. No. 45 at 24.

Defendant responds that "the 'means for storing' and 'means for maintaining' terms are indefinite because the specifications do not disclose any algorithms for performing these functions."  Dkt. No. 46 at 21.  Defendant argues that the disclosures cited by Plaintiff "provide a restatement of the claimed function," and "[t]hey are not algorithms that explain how a data element and/or informational object is stored or maintained *to ensure their immutability*."  *Id.* at 22.

### (2)  Analysis

The specification discloses storing data elements or informational objects in particular databases.  '696 Patent at 9:6–9 ("this newly created data element is permanently added to the registered data element database 124, along with its corresponding unique identifier"); '869 Patent at 18:12–15 (similar); *see also* '696 Patent at 10:30–36 ("stores the registered informational object in immutable form in the informational object database 125").  These terms present substantially the same dispute as the "authenticating means" terms addressed above, and the Court likewise finds here that the disclosed databases are the corresponding structures and that no algorithms are required.

"Storing" or "maintaining" data elements (or informational objects) in databases is a function that can be performed by a general-purpose computer without special programming, so no algorithm is required.  *See In re Katz*, 639 F.3d at 1315 ("Absent a possible narrower construction of the terms 'processing,' 'receiving,' and 'storing,' . . . those functions can be achieved by any general-purpose computer without special programming.  As such, it was not

necessary to disclose more structure than the general purpose processor that performs those functions.") (footnote omitted).

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"processor means and associated memory means accessible via a data communication connection for storing a plurality of said data elements and said informational objects"**<br><br>('696 Patent, Claims 6, 28) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "storing a plurality of said data elements and said informational objects"<br><br>Structure:<br>    **"registered data element database 124 and registered informational object database 125; and equivalents thereof"** |

| | |
|---|---|
| **"means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"**<br><br>**"informational object database means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"**<br><br>**"memory means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"**<br><br>**"protection means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"**<br><br>('869 Patent, Claims 4, 17, 22, 23; '668 Patent, Claim 4) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "maintaining in a read-only mode, a set of data that defines an informational object"<br><br>Structure:<br>    **"registered informational object database 125, and equivalents thereof"** |

**Y. "means for enabling an authorized accessing member to retrieve a selected informational object" (Term No. 66)**

| "means for enabling an authorized accessing member to retrieve a selected informational object" "access means for enabling an authorized accessing member to retrieve a selected informational object" ('869 Patent, Claim 2; '668 Patent, Claim 2) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "enabling an authorized accessing member to retrieve a selected informational object" Structure: "an authentication server ('869 Patent at 13:22–27, 22:52–58, Fig. 1B, Fig. 9; '668 Patent at 13:10–15, 22:21–28, Fig. 1B, Fig. 9), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Function: "enabling an authorized accessing member to retrieve a selected informational object" Structure: "Fig. 9" |
| **"member client server means for enabling an authorized accessing member to retrieve a selected informational object"** ('869 Patent, Claim 18) | |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function: "enabling an authorized accessing member to retrieve a selected informational object" Structure: "a member accessing server software module ('869 Patent at 13:22–27, 22:60–23:10, Fig. 1B, Fig. 9), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). Function: "enabling an authorized accessing member to retrieve a selected informational object" Structure: "Fig. 9" |

Dkt. No. 38, Ex. A at 24–25; *id.*, Ex. B at 40.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction:

| Term | Preliminary Construction |
|---|---|
| "means for enabling an authorized accessing member to retrieve a selected informational object"<br><br>"access means for enabling an authorized accessing member to retrieve a selected informational object"<br><br>('869 Patent, Claim 2;<br>'668 Patent, Claim 2) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized accessing member to retrieve a selected informational object"<br><br>Structure:<br>    "member server 144, and equivalents thereof" |
| "member client server means for enabling an authorized accessing member to retrieve a selected informational object"<br><br>('869 Patent, Claim 18) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "enabling an authorized accessing member to retrieve a selected informational object"<br><br>Structure:<br>    "member server 144, and equivalents thereof" |

Plaintiff argues that "it cannot be reasonably disputed that the specifications disclose that the structure for performing that function is the authentication server that checks the member's identity to ensure that the accessing member has the permissions to retrieve the stored informational objects." Dkt. No. 45 at 26–27 (citations and footnote omitted). Moreover, Plaintiff argues that "to the extent additional structural algorithm is required, Pardalis agrees with IBM that Figure 9 depicts such an algorithm that performs the function of enabling an authorized accessing member to retrieve a selected informational object." *Id.* at 27.

Defendant's response brief does not specifically address this term. *See* Dkt. No. 46.

These terms are not addressed in the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 56). At the March 8, 2024 hearing, Defendant noted that some of the Court's preliminary constructions address terms that are no longer at issue, and Defendant cited the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (*id.*). The Court therefore concludes that these terms are no longer in dispute and need not be construed. The Court accordingly does not further address these terms.

**Z. "means for updating" (Term No. 53)**

<table>
<tr><td colspan="2">

**"means for updating an informational object by creating a new informational object relating back to said informational object and containing at least one new data element"**
**"version management means for updating an informational object by creating a new informational object relating back to said informational object and containing at least one new data element"**
**"update means for updating an informational object by creating a new informational object relating back to said informational object and containing new data"**
('696 Patent, Claims 9, 31;
'869 Patent, Claim 1;
'668 Patent, Claim 3)

</td></tr>
<tr><td>

**Plaintiff's Proposed Construction**

</td><td>

**Defendant's Proposed Construction**

</td></tr>
<tr><td>

Function:
    "updating an informational object by creating a new informational object that relates back to the informational object and further contains at least one new data element"

Structure:
    "an authoring server ('696 Patent at 2:46–52, 5:55–59, 9:32–42, 9:61–67, Fig. 1B, Fig. 5; '869 Patent at 12:4–8, 13:22–27, 18:36–50, 19:11–25, 21:65–22:8, Fig. 1B, Fig. 5, Fig. 18; '668 Patent at 11:62–65, 13:10–15, 18:13–27, 18:54–67, 21:35–45, Fig. 1B, Fig. 5, Fig. 18), and equivalents thereof"

</td><td>

This term is governed by 35 U.S.C. § 112(6).

Indefinite.

</td></tr>
</table>

<table>
<tr><td colspan="2" align="center">**"informational object editing authoring client server means for updating an informational object by creating a new informational object relating back to said informational object and containing new data"**<br>('869 Patent, Claim 17)</td></tr>
<tr><td>**Plaintiff's Proposed Construction**</td><td>**Defendant's Proposed Construction**</td></tr>
<tr><td>Function:<br>    "updating an informational object by creating a new informational object that relates back to the informational object and further contains at least one new data element"<br><br>Structure:<br>    "an authoring server software module ('869 Patent at 12:4–8, 13:22–27, 18:36–50, 19:11–24, 21:65–22:8, Fig. 1B, Fig. 5, Fig. 18), and equivalents thereof"</td><td>This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite.</td></tr>
</table>

Dkt. No. 38, Ex. A at 16–17; *id.*, Ex. B at 28; Dkt. No. 56, Ex. A at 126.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Indefinite."

(1)  The Parties' Positions

Plaintiff argues that "it cannot reasonably be disputed that the specifications disclose that the structure for performing this function is the authoring server, and equivalents thereof."  Dkt. No. 45 at 27 (citations and footnote omitted).  Plaintiff also argues that, if an algorithm is necessary, the specification discloses "steps [that] are carried out by known computer-implement[ed] operations and are readily implemented by persons of skill in computer programming."  *Id.* at 28.

Defendant responds that "[e]ven assuming Pardalis's identification of the 'authoring server' as performing this function is correct, these terms are indefinite, because the Asserted Patents do not describe any algorithms that can perform the claimed function."  Dkt. No. 46 at 19.

Defendant argues that the disclosure cited by Plaintiff "is not a step-by-step procedure that explains how an informational object is 'updated' by creating a new informational object that 'relates back.' It is functional language stating generally that data elements may be selected to 'facilitate the authoring' of informational objects. *How* those data elements are maintained, selected, or set to 'relate back,' remains undisclosed." *Id.*

At the March 8, 2024 hearing, the parties presented oral arguments as to these terms.

(2)  Analysis

The parties agree that these are means-plus-function terms governed by 35 U.S.C. § 112, ¶ 6.  The parties dispute whether the specification discloses sufficient corresponding structure.

"In exchange for using this form of claiming, the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that structure to the function." *Triton Tech of Tex., LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1378 (Fed. Cir. 2014).

The '696 Patent refers to updating by way of "supplant[ing]" an existing data element:

> Since the data elements are fixed, they do not require updating and a new version of a Material Safety Data Sheet for a particular chemical simply includes a unique identifier that points to a replacement data element, while the original data element is maintained in the central database. Thus, a data element is not expunged from the database but is simply *supplanted by a later version* of the data element.

'696 Patent at 2:46–52 (emphasis added).

Also, the '869 Patent refers to an "update" of stored data:

> The operation of the Common Point Authoring system 10 is therefore hierarchical in nature, with each change in ownership and/or location of the animal requiring an *update* of the data stored in the Common Point Authoring system 10.
>
> * * *
>
> While a Member may select a registered Data Element from the Registered Data Element Database 124, steps 513–514 would also allow a permitted Member to

> select Data Elements from a previously authored Livestock Informational Object which would facilitate the authoring of information from one Livestock Informational Object into many Livestock Informational Objects referencing an animal['] s fabricated products.

'869 Patent at 12:4–8 & 19:18–24 (emphasis added); *see id.* at 16:28–31 ("FIG. 16 processes illustrate how a Member of the Common Point Authoring system may initiate the creation, registration and updating of a Member ID Informational Object.").

None of the disclosures cited by Plaintiff, however, explains what structure performs the "updating." Moreover, there is no linkage to the claimed functions as to "relating back." At the March 8, 2024 hearing, Plaintiff cited, for example, disclosure regarding livestock being "traced back" (*id.* at 21:65–22:13), but, even assuming this amounts to "relating back," Plaintiff identifies no disclosure of what structure would do it. The specification uses the word "relates" but not in a manner relevant to the "means for updating" terms. *See id.* at 17:30–33 ("the review and certification process executed by the Common Point Authoring system 10 relates the proposed draft Data Element to all other Data Elements of this category").

The disclosures regarding "pointers" cited by Plaintiff likewise do not link any structure to the claimed functions of "updating" and "relating back." *See* '696 Patent at 2:34–45 ("A particular Value-Added Material Safety Data Sheet contains pointers that identify a plurality of immutable 'building blocks' of information that, when collected, comprise the Material Safety Data Sheet."); *see also* '869 Patent at 13:61–14:10 ("The Data Elements 211–216 that are associated with a particular Informational Object 200 are typically stored in a separate file system from the Informational Object 200, and are linked via the use of pointers, which comprise the Data Element unique identifiers 221–226.").

The specifications thus do not "clearly link" any structure to the claimed functions. *Triton*, 753 F.3d at 1378. Further, despite Plaintiff's apparent arguments, in the context of 35 U.S.C. §

112, ¶ 6, it is not sufficient to argue (or even to prove) that a person of ordinary skill in the art could figure out how to perform the claimed functions. *See Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007) ("The inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure.").

Therefore**, Claims 9 and 31 of the '696 Patent, Claim 1 of the '869 Patent, Claim 3 of the '668 Patent, and Claim 17 of the '869 Patent are indefinite**.

**AA.  "authoring server" (Term Nos. 55(b), 58(b), 70(b), 72) and "authentication server" (Term Nos. 57(b), 71)**

| **"an authoring server for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"**<br>('902 Patent, Claim 6;<br>'790 Patent, Claim 6) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Not governed by 35 U.S.C. § 112(6). Not indefinite.<br><br>Alternatively, function:<br>    "enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"<br><br>Structure:<br>    "an authoring server ('902 Patent at 11:48–12:20, 13:29–34, 18:38–53, 21:67–22:7, Fig. 1B, Fig. 5, Fig. 6, Fig. 19; '790 Patent at 11:48–12:20, 13:29–34, 18:38–53, 21:67–22:7, Fig. 1B, Fig. 5, Fig. 6, Fig. 19), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite. |

| **"an authoring server for converting the draft informational object created by the authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier"** <br> ('000 Patent, Claim 8) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Not governed by 35 U.S.C. § 112(6). Not indefinite. <br><br> Alternatively, function: <br>    "converting the draft informational object created by the authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier" <br><br> Structure: <br>    "an authoring server ('000 Patent at 13:12–17, 19:28–37, Fig. 1B, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). <br><br> Indefinite |

| **"an authoring server for enabling an authorized authoring member to create data comprising a draft informational object"** <br> ('000 Patent, Claim 8) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Not governed by 35 U.S.C. § 112(6). Not indefinite. <br><br> Alternatively, function: <br>    "enabling an authorized authoring member to create data comprising a draft informational object" <br><br> Structure: <br>    "an authoring server ('000 Patent at 13:12–17, 18:17–30, Fig. 1B, Fig. 5), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6). <br><br> Indefinite |

| **"an authoring server for converting the authenticated informational object created by the authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier for tracking the immutable informational object"**<br>('902 Patent, Claim 6;<br>'790 Patent, Claim 6) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Not governed by 35 U.S.C. § 112(6). Not indefinite.<br><br>Alternatively, function:<br>    "converting the authenticated informational object created by the authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier for tracking the immutable informational object"<br><br>Structure:<br>    "an authoring server ('902 Patent at 11:48–12:20, 13:29–37, 19:52–62, 21:67–22:7, Fig. 1B, Fig. 6, Fig. 19; '790 Patent at 11:48–12:20, 13:29–37, 19:52–62, 21:67–22:7, Fig. 1B, Fig. 6, Fig. 19), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite |

| **"an authentication server for authenticating the draft informational object created by the authorized authoring member"** ('000 Patent, Claim 8) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, function:<br>    "authenticating the draft informational object created by the authorized authoring member"<br><br>Structure:<br>    "an authoring server ('000 Patent at 13:12–20, 19:26–28, Fig. 1B, Fig. 6), and equivalents thereof" | This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite<br><br>Alternatively:<br><br>Function:<br>    "authenticating said draft informational object created by said authorized authoring member"<br><br>Structure:<br>    "authoring server 143 implementing the steps described at ('869 patent, 19:50–52; '000 patent, 19:26–28)" |

<table>
<tr><td colspan="2" align="center"><strong>"an authentication server for authenticating the draft informational object, which uniquely identifies a product for tracking purposes, created by the authorized authoring member"</strong><br><strong>"an authentication server for authenticating the draft informational object, which uniquely identifies the processed product for tracking purposes, created by the authorized authoring member"</strong><br>('902 Patent, Claim 6;<br>'790 Patent, Claim 6)</td></tr>
<tr><td><strong>Plaintiff's Proposed Construction</strong></td><td><strong>Defendant's Proposed Construction</strong></td></tr>
<tr><td>No construction necessary. Not governed by 35 U.S.C. § 112(6).<br><br>Alternatively, function:<br>    "authenticating the draft informational object, which uniquely identifies a product for tracking purposes, created by the authorized authoring member"<br><br>Structure:<br>    "an authoring server ('902 Patent at 11:48–12:20, 13:29–37, 19:47–52, 21:67–22:7, Fig. 1B, Fig. 5, Fig. 19; '790 Patent at 11:48–12:20, 13:29–37, 19:47–52, 21:67–22:7, Fig. 1B, Fig. 5, Fig. 19), and equivalents thereof"</td><td>This term is governed by 35 U.S.C. § 112(6).<br><br>Indefinite<br><br>Alternatively:<br><br>Function:<br>    "authenticating the draft informational object, which uniquely identifies a product for tracking purposes, created by the authorized authoring member"<br><br>Structure:<br>    "authoring server 143 implementing the steps described at ('902 patent, 19:50–52; '790 patent, 19:50–52)"</td></tr>
</table>

Dkt. No. 38, Ex. A at 18–21 & 28–30; *id.*, Ex. B at 30, 44, 45 & 46; Dkt. No. 56, Ex. A at 130–31, 133–34, 141, 143–44 & 145–46.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary constructions:

| Term | Preliminary Construction |
|---|---|
| "an authoring server for enabling an authorized authoring member to create data comprising a draft informational object, which uniquely identifies a product for tracking purposes"<br><br>('902 Patent, Claim 6;<br>'790 Patent, Claim 6) | Not governed by 35 U.S.C. § 112, ¶ 6<br><br>Plain meaning (apart from the Court's constructions of constituent terms recited therein) |
| "an authoring server for converting the draft informational object created by the authorized | Not governed by 35 U.S.C. § 112, ¶ 6 |

| | |
|---|---|
| authoring member to a corresponding immutable informational object which is identified by a unique identifier"<br><br>('000 Patent, Claim 8) | Plain meaning (apart from the Court's constructions of constituent terms recited therein) |
| "an authoring server for enabling an authorized authoring member to create data comprising a draft informational object"<br><br>('000 Patent, Claim 8) | Not governed by 35 U.S.C. § 112, ¶ 6<br><br>Plain meaning (apart from the Court's constructions of constituent terms recited therein) |
| "an authoring server for converting the authenticated informational object created by the authorized authoring member to a corresponding immutable informational object which is identified by a unique identifier for tracking the immutable informational object"<br><br>('902 Patent, Claim 6;<br>'790 Patent, Claim 6) | Not governed by 35 U.S.C. § 112, ¶ 6<br><br>Plain meaning (apart from the Court's constructions of constituent terms recited therein) |
| "an authentication server for authenticating the draft informational object created by the authorized authoring member"<br><br>('000 Patent, Claim 8) | Not governed by 35 U.S.C. § 112, ¶ 6<br><br>Plain meaning (apart from the Court's constructions of constituent terms recited therein) |
| "an authentication server for authenticating the draft informational object, which uniquely identifies a product for tracking purposes, created by the authorized authoring member"<br><br>"an authentication server for authenticating the draft informational object, which uniquely identifies the processed product for tracking purposes, created by the authorized authoring member"<br><br>('902 Patent, Claim 6;<br>'790 Patent, Claim 6) | Not governed by 35 U.S.C. § 112, ¶ 6<br><br>Plain meaning (apart from the Court's constructions of constituent terms recited therein) |

(1)  The Parties' Positions

Plaintiff argues that "the disputed limitations are not subject to §112(6) because a PHOSITA would understand the terms 'authoring server' and 'authentication server' to refer to sufficiently definite structures."  Dkt. No. 45 at 28.  Plaintiff also cites several authorities and argues that "a server is generally understood to be a computer system that provides services to

other computer systems." *Id.* at 29.  Plaintiff further argues that "the disputed limitations are not subject to §112(6) because the claims themselves connote sufficiently definite structure by describing how the 'authoring server' and the 'authentication server' operate within the claimed invention to achieve their respective objectives." *Id.* (citations omitted).

Defendant responds that "authoring server for" and "authentication server for" are nonce words, and "[t]he patents themselves equate 'authoring server' and 'authentication server' with software *modules*." Dkt. No. 46 at 23 (citations omitted).  Defendant also argues that "[t]he patents do not describe *how* the authoring or authentication servers perform the specialized functions Pardalis assigns to them," and Defendant therefore argues these terms are indefinite.  *Id.* at 24.

Plaintiff replies that "IBM cannot overcome th[e] presumption [against applying 35 U.S.C. § 112(6) to terms that do not use the word 'means'] because the claim terms provide sufficiently definite structure in view of the intrinsic record, expert testimony, and IBM's own argument that 'servers' are the structure for other terms that are written in means-plus-function format."  Dkt. No. 48 at 7.  Plaintiff also argues that "[n]ot only is a server a definite structure, but the claims couple these terms with a description of the server's operation that provides sufficient structural meaning to a POSITA."  *Id.* at 8 (citation omitted).

At the March 8, 2024 hearing, the parties presented oral arguments as to these terms.

(2)  Analysis

Title 35 U.S.C. § 112(f) (formerly § 112, ¶ 6) provides: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

"[T]he failure to use the word 'means' . . . creates a rebuttable presumption . . . that § 112, para. 6 does not apply." *Williamson v. Citrix Online LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (citations and internal quotation marks omitted). "When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* at 1349 (citations and internal quotation marks omitted).

*Williamson*, in an en banc portion of the decision, abrogated prior statements that the absence of the word "means" gives rise to a "strong" presumption against means-plus-function treatment. *Id.* (citation omitted). *Williamson* also abrogated prior statements that this presumption "is not readily overcome" and that this presumption cannot be overcome "without a showing that the limitation essentially is devoid of anything that can be construed as structure." *Id.* (citations omitted). Instead, *Williamson* found, "[h]enceforth, we will apply the presumption as we have done prior to *Lighting World* . . . ." *Id.* (citing *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004)). In a subsequent part of the decision not considered en banc, *Williamson* affirmed the district court's finding that the term "distributed learning control module" was a means-plus-function term that was indefinite because of lack of corresponding structure, and in doing so *Williamson* stated that "'module' is a well-known nonce word." 792 F.3d at 1350.

Defendant submits that the specification refers to "authoring server" and "authentication server" as being "software modules." The specification discloses:

> [A]n applications server 121 is illustrated herein, executing a plurality of *software modules*: *authentication server 141*, tracking/billing server 142, *authoring server 143*, Member accessing server 144, advertising server 145, but multiple servers can be used to perform this task.

'869 Patent at 13:22–27 (emphasis added).  Defendant argues that these terms, like the "module" in *Williamson*, are "nonce words that reflect nothing more than verbal constructs" that "may be used in a claim in a manner that is tantamount to using the word means because they typically do not connote sufficiently definite structure."  *Id.* at 1350.  Defendant also argues that the disputed terms are written in a format "consistent with the traditional means-plus-function claim limitations."  *Id.*

As discussed at the March 8, 2024 hearing, Defendant identifies no Federal Circuit decision that has found "server" to be a nonce term.  Moreover, even if the "server" terms were deemed to be merely software modules, as Defendant suggests, the Federal Circuit has found in a post-*Williamson* decision that software "code" can be a structure such that the presumption against means-plus-function treatment is not rebutted.  *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1366 (Fed. Cir. 2022).  Indeed, as the Federal Circuit noted, "[c]laim terms 'need not connote a single, specific structure,' and may instead 'describe a class of structures' and still recite 'sufficiently definite structure' to not invoke § 112 ¶ 6."  *Id.* (quoting *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1300 (Fed. Cir. 2014)).

Also, Defendant points to other claims that recite a "means for authoring" or a "means for authenticating" (*compare* '869 Patent at Cl. 3 *with* '902 Patent at Cl. 6), but if anything those claims merely underscore that the patentee choose *not* to invoke 35 U.S.C. § 112, ¶ 6 as to the "authoring server" and "authentication server."

Finally, Defendant argues that "the patents do not describe how the authoring or authentication servers perform the specialized functions Pardalis assigns to them."  Dkt. No. 46 at 24.  Such arguments perhaps might pertain to issues of enablement or written description but do not present any issue of indefiniteness.

On balance, the terms "authoring server" and "authentication server" are "understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure" and therefore are not governed by 35 U.S.C. § 112, ¶ 6.  *Williamson*, 792 F.3d at 1348.  The opinions of Defendant's expert to the contrary are unpersuasive.  *See* Dkt. No. 46, Ex. A Dec. 5, 2023 Thuraisingham Decl. at ¶¶ 175–191 & 232–250.  Indeed, Defendant itself has proposed that "authoring server 143" is a structure that corresponds to several means-plus-function terms, as discussed above.  *See, e.g.,* Dkt. No. 56, Ex. A at 128, 133, 140 & 144.

The Court thus expressly rejects Defendant's arguments that these disputed terms are governed by 35 U.S.C. § 112, ¶ 6.  Defendant presents no alternative proposed constructions, and no further construction is necessary.

The Court accordingly hereby construes the above-referenced terms to have their **plain meaning** (apart from the Court's constructions of constituent terms recited therein).

**BB.  Dependent Method Claim 15 of the '869 Patent (Term 67(b))**

| "maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements" ('869 Patent, Claim 15) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| No construction necessary. Not governed by 35 U.S.C. § 112(6). Not indefinite.<br><br>Alternatively, function:<br>    "maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>Structure:<br>    "an informational object database ('869 Patent at 13:9–20, 13:62–14:10, 19:56–62, Fig. 1B, Fig. 2, Fig. 6), and equivalents thereof" | Indefinite |

Dkt. No. 38, Ex. A at 9 & 25–26; *id.*, Ex. B at 12 & 41.

Shortly before the start of the March 8, 2024 hearing, the Court provided the parties with the following preliminary construction: "Plain and Ordinary Meaning (apart from the Court's constructions of constituent terms recited therein)."

Plaintiff argues that "[n]othing in this method claim suggests 'means-for' or 'step-for' language," and "[t]o the extent that IBM's position is that this claim is a system claim because of the preamble, the preamble is not limiting and a PHOSITA would readily understand that the claim adds a method step to claim 14." Dkt. No. 45 at 30.

Defendant's response brief does not address this term. *See* Dkt. No. 46.

This term is not addressed in the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 56).  At the March 8, 2024 hearing, Defendant noted that some of

the Court's preliminary constructions address terms that are no longer at issue, and Defendant cited the parties' February 23, 2024 Patent Rule 4-5(d) Joint Claim Construction Chart (*id.*).  The Court therefore concludes that this term is no longer in dispute and need not be construed.  The Court accordingly does not further address this term.

## V.  CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 16th day of March, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

| Term | Parties' Agreement |
|---|---|
| "relating back"<br><br>"relating the copy of the immutable informational object . . . to the immutable informational object"<br><br>('696 Patent, Claims 9, 20, 31;<br>'869 Patent, Claims 1, 9, 17;<br>'668 Patent, Claims 3, 9;<br>'000 Patent, Claims 1, 8;<br>'902 Patent, Claims 2, 9;<br>'790 Patent, Claims 2, 9) | Plain and ordinary |
| "permissions"<br><br>('000 Patent, Claims 1, 8;<br>'765 Patent, Claim 1;<br>'902 Patent, Claims 1, 6;<br>'790 Patent, Claims 1, 6) | "attributes associated with either data elements or informational objects that control access by members" |
| "means for associating said unique identifier assigned to said created informational object with said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>"mapping means for associating said unique identifier assigned to said created informational object with said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>"linking means for associating said unique identifier assigned to said created informational object with said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>('696 Patent, Claims 5, 27;<br>'668 Patent, Claim 5;<br>'869 Patent, Claims 5, 24) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "associating said unique identifier assigned to said created informational object with said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>Structure:<br>    "pointers, which comprise the unique identifiers that correspond to a selected set of data elements ('696 patent, 6:8–13; '869 patent, 5:20–26; 14:5–10; '869 patent, 5:20–25, 13:59–64)" |

| | |
|---|---|
| "first means for maintaining in a read-only mode, a plurality of immutable data elements, each of which is identified by a unique identifier"<br><br>"data element database means for maintaining in a read-only mode, a plurality of immutable data elements, each of which is identified by a unique identifier"<br><br>('696 Patent, Claims 1, 23) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>     "Maintaining in a read-only mode, a plurality of immutable data elements, each of which is identified by a unique identifier"<br><br>Structure:<br>     "Registered data element database 124 (and equivalents thereof)" |
| "second means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>"informational object database means for maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data element"<br><br>('696 Patent, Claims 1, 23) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>     "Maintaining in a read-only mode, a set of data that defines an informational object, said set of data comprising a plurality of said unique identifiers that correspond to a selected set of said plurality of data elements"<br><br>Structure:<br>     "Registered informational object database 125 (and equivalents thereof)" |
| "data element registering means for assigning a unique identifier to said created data element"<br><br>('696 Patent, Claim 25) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>     "assigning a unique identifier to said created data element"<br><br>Structure:<br>     "authoring server as described at 8:66–9:2, and equivalents thereof" |

| | |
|---|---|
| "means for authenticating said draft informational object created by said authorized authoring member"<br><br>('869 Patent, Claim 1) | This term is governed by 35 U.S.C. § 112(6).<br><br>Function:<br>    "authenticating a draft informational object created by an authorized authoring member"<br><br>Structure:<br>    "authoring server as described at 19:50–52, and equivalents thereof" |

Dkt. No. 38 at 1–3; Dkt. No. 56, Ex. A at 54, 97, 122, 123 & 132.