**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PARDALIS TECHNOLOGY LICENSING, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> Defendant. | Civil Action No. 2:22-cv-00452-JRG-RSP <br><br> ██████████████ <br><br> Jury Trial Demanded |

**PLAINTIFF PARDALIS TECHNOLOGY LICENSING, L.L.C.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT OF VALIDITY</u>**

████████████████████

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED BY THE COURT .................................... 1

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................. 2

IV.   APPLICABLE LEGAL STANDARDS .......................................................................... 6

  A.   Summary Judgment ....................................................................................... 6

  B.   Presumption of Validity ................................................................................. 7

  C.   Written Description ......................................................................................... 7

  D.   Enablement ..................................................................................................... 8

V.    ARGUMENT ............................................................................................................... 8

  A.   Pardalis is Entitled to Partial Summary Judgment Dismissing IBM's Invalidity
       Defenses under 35 U.S.C. § 102(f) for Alleged "Incorrect Inventorship" ......................... 8

  B.   Pardalis is Entitled to Partial Summary Judgment Dismissing IBM's Invalidity
       Defenses Based on 35 U.S.C. § 112 for Lack of Written Description Regarding Claims
       with "Informational Object" and "Data Element" Limitations ........................................ 10

  C.   IBM's Lack of Enablement Defenses Are Inadequate as a Matter of Law ...................... 13

VI.   CONCLUSION ........................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*Alcon Research Ltd. v. Barr Labs., Inc.,*
745 F.3d 1180 (Fed. Cir. 2014) .................................................................................. 13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................................................................... 7

*Ariad Pharm., Inc. v. Eli Lilly and Co.,*
598 F.3d 1336 (Fed. Cir. 2010) .............................................................................. 7, 14

*Cassidian Communs., Inc. v. Microdata Gis, Inc.,*
No. 2:12-CV-162-JRG, 2015 U.S. Dist. LEXIS 51331 (E.D. Tex. April 20, 2015) ................... 9

*CCS Fitness, Inc. v. Brunswick Corp.,*
288 F.3d 1359 (Fed. Cir. 2002) ................................................................................... 8

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .................................................................................................. 6, 14

*Centocor Ortho Biotech, Inc. v. Abbott Laboratories,*
636 F.3d 1341 (Fed. Cir. 2011) ................................................................................. 11

*Chiron Corp. v. Abbott Labs.,*
No. C-93-4280, 1996 U.S. Dist. LEXIS 4802 (N.D. Cal. Apr. 23, 1996) ................................ 14

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
363 F.3d 1263 (Fed. Cir. 2004) ................................................................................. 13

*Elcommerce.com, Inc. v. SAP AG, et al.,*
745 F.3d 490 (Fed. Cir. 2014) ................................................................................... 13

*Eli Lilly & Co. v. Barr Labs., Inc.,*
251 F.3d 955 (Fed. Cir. 2001) ..................................................................................... 7

*Hybritech Inc. v. Monoclonal Antibodies, Inc.,*
802 F.2d 1367 (Fed. Cir. 1986) ................................................................................. 14

*In re Haves Microcomputer Prods., Inc. Patent Litig.,*
982 F.2d 1527 (Fed. Cir. 1992) ................................................................................. 12

*In re Wands,*
858 F.2d 731 (Fed. Cir. 1988) ..................................................................................... 8

*Inline Connection Corp. v. Earthlink, Inc.,*
684 F. Supp. 2d 496 (D. Del. 2010) ....................................................................... 11, 14

███████████████████████████

*Johns Hopkins Univ. v. CellPro, Inc.*,
  152 F.3d 1342 (Fed. Cir. 1998) ................................................................. 14

*Microsoft Corp. v. i4i Ltd. Partnership*,
  131 S. Ct. 2238 (2011) ........................................................................... 7

*Moba, B.V. v. Diamond Automation, Inc.*,
  325 F.3d 1306 (Fed. Cir. 2003) ............................................................... 11

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ............................................................... 8

*Pozen, Inc. v. Par Pharm.*,
  696 F.3d 1151 (Fed. Cir. 2012) ............................................................... 12

*Purdue Pharma, et al. v. Faulding Inc., et al.*,
  230 F.3d 1320 (Fed. Cir. 2000) ............................................................... 12

*Shum v. Intel Corp.*,
  633 F.3d 1067 (Fed. Cir. 2010) ............................................................... 6

*Sitrick v. Dreamworks, LLC*,
  516 F.3d 993 (Fed. Cir. 2008) ................................................................. 13

*Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*,
  743 F.3d 1359 (Fed. Cir. 2014) ............................................................... 8

*Tyco Healthcare Group LP v. Biolitec, Inc.*,
  No. C-08-3129, 2010 U.S. Dist. LEXIS 79560 (N.D. Cal. Aug. 3, 2010) ............... 11

*Vas-Cath Inc. v. Mahurkar*,
  935 F.2d 1555  (Fed. Cir. 1991) ............................................................... 12

*Viskase Corp. v. Am. Nat. Can Co.*,
  261 F.3d 1316 (Fed. Cir. 2001) ............................................................... 9

*Wang Labs., Inc. v. Toshiba Corp.*,
  993 F.2d 858 (Fed. Cir. 1993) ................................................................. 12

## **Statutes**

35 U.S.C. § 102(f) ......................................................................... 1, 9, 14

35 U.S.C. § 112 ............................................................................. 1, 10, 15

35 U.S.C. § 256 ............................................................................... 8, 9

Fed. R. Civ. P. 56(a) .......................................................................... 6

███

███████████████████████████████████

**Other Authorities**

37 C.F.R. 1.324 ............................................................................................................... 8, 9

Local Rule CV-56 ............................................................................................................... 1

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule CV-56, Plaintiff Pardalis Technology Licensing, L.L.C. ("Pardalis") files this Motion for Partial Summary Judgment of Validity of U.S. Patent No. 6,671,696 ("the '696 patent"); U.S. Patent No. 7,136,869 ("the '869 patent"); U.S. Patent No. 7,949,668 ("the '668 patent"); U.S. Patent No. 8,307,000 ("the '000 patent"); U.S. Patent No. 10,409,902 ("the '902 patent"); and U.S. Patent No. 11,126,790 ("the '790 patent") (collectively, the "Asserted Patents"). In particular, Pardalis moves for summary judgment against Defendant International Business Machines Corporation's ("IBM") invalidity defenses of (i) incorrect inventorship under 35 U.S.C. § 102(f) for the '668, '000, '902, and '790 patents, (ii) a lack of written description concerning the "informational object" and "data element" limitations under 35 U.S.C. § 112, and (iii) a lack of enablement by the Asserted Patents, also under 35 U.S.C. § 112. As discussed in detail herein, IBM fails to establish any genuine issue of material fact with respect to any of these defenses. Summary judgment is therefore appropriate.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Pardalis's Motion for Partial Summary Judgment raises three issues regarding the validity of the Asserted Claims:

1.    <u>Inventorship</u>: Whether any genuine factual disputes preclude a determination by this Court that the '668, '000, '902 and '790 patents are not invalid under 35 U.S.C. § 102(f) due to incorrect inventorship.

2.    <u>No lack of written description</u>: Whether any genuine factual disputes preclude a determination by this Court that the Asserted Claims comply with the written description requirement of 35 U.S.C. § 112 for the "informational object" and "data elements" limitations.

1

3.    No lack of enablement: Whether any genuine factual disputes preclude a determination by this Court that the Asserted Claims comply with the enablement requirement.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Facts Pertaining to the Background of this Litigation

1.    Pardalis filed its Complaint on November 22, 2022. (Dkt. No. 1).

2.    IBM filed its Answer and Counterclaims to the Complaint on January 30, 2023. (Dkt. No. 13). IBM alleged defenses and counterclaims of invalidity as to each asserted patent. (Dkt. No. 13, ¶¶ 252-272).

3.    Pardalis filed its First Amended Complaint on October 11, 2023. (Dkt. No. 33).

4.    IBM filed an Amended Answer to the First Amended Complaint and Counterclaims on November 10, 2023, which included the same defenses and counterclaims as its original answer and counterclaims. *(*Dkt. No. 34, ¶¶ 258-276, 304-324).

### B.    Facts Pertaining to IBM's Incorrect Inventorship Allegations

5.    In both its original Answer and Amended Answer, IBM pleaded the defenses and counterclaims of invalidity for each Asserted Patent under at least 35 U.S.C. § 102 and also included counterclaims of invalidity as to each asserted patent. (Dkt. No. 13, ¶¶ 206 – 212, 252-272; Dkt. No. 34, ¶¶ 258-276, 304-324).

6.    On May 9, 2023, IBM served its Invalidity Contentions in which it specifically alleged its invalidity defenses under 35 U.S.C. § 102(f), concerning alleged incorrect inventorship of the '668, '000, '902 and '790 patents. (Ex. A, IBM's Invalidity Contentions, p. 305).

7.    On March 5, 2024, prosecution counsel for Pardalis submitted Requests for Certificates of Correction for the '668, '000, '902 and '790 patents to formally recognize Ms. Kathleen D. Legako as an inventor of these patents. (Ex. B, '668 patent Request,

2

PARDALIS_0043423; Ex. C, '000 patent Request, PARDALIS_0043214; Ex. D, '902 patent Request, PARDALIS_0043004; Ex. E, '790 patent Request, PARDALIS_0042788).

8.     Both Steven L. Holcombe and Kathleen D. Legako declared, for each Request for a Certificate of Correction, that any inventorship error was made without deceptive intent. (Ex. B, '668 patent Request, PARDALIS_0043423 at -33, -35; Ex. C, '000 patent Request, PARDALIS_0043214 at -24, -27; Ex. D, '902 patent Request, PARDALIS_0043004 at -16, -17; Ex. E, '790 patent Request, PARDALIS_0042788 at -799, -800).

9.     Each Request for a Certificate of Correction further acknowledges that Marvin L. Stone, an originally named inventor to the '668, '000, '902 and '790 patents, is deceased. (Ex. B, '668 patent Request, PARDALIS_0043423 at -36, -37; Ex. C, '000 patent Request, PARDALIS_0043214 at -28, -29; Ex. D, '902 patent Request, PARDALIS_0043004 at -19, -20; Ex. E, '790 patent Request, PARDALIS_0042788 at -802, -803).

10.     On April 9, 2024, the United States Patent and Trademark Office issued Certificates of Correction for the '902 and '790 patents, formally recognizing Ms. Kathleen D. Legako as an inventor. (Ex. D, '902 patent Certificate of Correction; Ex. E, '790 patent Certificate of Correction).

### C.     Facts Pertaining to IBM's Lack of Written Description Allegations

11.     The '696 Patent states "[t]he resources illustrated herein are selected for the purpose of illustrating the concept of the informational object authoring and distribution system 10 and are not intended to limit the applicability of this concept to other network implementations or system configurations." (Ex. H, '696 patent, 5:28 – 32). Similar language is also present in the '869, '668, '000, '902, and '790 patents. (Ex. I, '869 patent, 13:42 – 46; Ex. J, '668 patent, 13:30 – 34; Ex. K, '000 patent, 13:32 – 36; Ex. L, '902 patent, 13:49 – 53; Ex. M, '790 patent, 13:49 – 53).

3

12.    The '696 Patent states "[t]hus, the informational object authoring and distribution system 10 disclosed herein represents one of many possible implementations to provide the described functionality to the designated recipients." (Ex. H, '696 patent, 5:59 – 63). Similar language is also present in the '869, '668, '000, '902, and '790 patents. (Ex. I, '869 patent, 13:27 – 30; Ex. J, '668 patent, 13:15 – 18; Ex. K, '000 patent, 13:17 – 20; Ex. L, '902 patent, 13:34 – 37; Ex. M, '790 patent, 13:34 – 37).

13.    The '696 Patent states "[t]he architecture of the informational object authoring and distribution system 10 described herein represents a typical implementation of the informational object authoring and distribution system 10 and its operating environment and is not intended to limit the scope of the underlying concept as defined in the enclosed claims." (Ex. H, '696 patent, 6:20 – 25). Similar language is also present in the '869, '668, '000, '902, and '790 patents. (Ex. I, '869 patent, 15:15 – 19; Ex. J, '668 patent, 14:1 – 5; Ex. K, '000 patent, 14:4 – 8; Ex. L, '902 patent, 14:21 – 25; Ex. M, '790 patent, 14: 21 – 25).

14.    The '869 Patent states "[t]he beef livestock industry is illustrative of the nature of this problem and is used as an example for the purpose of illustrating the operation of the present Common Point Authoring system but is not intended to limit the scope of the described system. The Common Point Authoring system may have application to any industry where information having reference to a physical or processed product has need to be authored, uniquely identified, authenticated, tracked, Owner controlled, advertised, sold and/or purchased for compliance with governmental regulations and/or for commercial reasons." (Ex. I, '869 patent, 3:60 – 4:3). Similar language is also present in the'668, '000, '902, and '790 patents. (Ex. J, '668 patent, 3:59 – 4:3; Ex. K, '000 patent, 3:64 – 4:7; Ex. L, '902 patent, 4:1 – 11; Ex. M, '790 patent, 4:2 – 12).

4

██████████████████████████████████████████

15.    IBM's invalidity defenses, alleging that the Asserted Claims lack written description under 35 U.S.C. § 112 for the "informational object" and "data elements" limitations, are set forth in Dr. Turnbull's expert report. (Ex. N, Turnbull Invalidity Report, ¶¶ 2761 – 2769).

16.    In its Claim Construction Order, the Court construed "informational object" to mean "a set of one or more data elements, data element sets, informational objects, or any combination thereof" and construed "data element(s)" as having its plain and ordinary meaning. (Dkt. No. 75, pp. 8 – 15).

17.    ██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████

18.    ██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

19.    With respect to the "informational object" and "data elements" limitations, Dr. Turnbull offers no opinion regarding what a person of ordinary skill in the art would have understood based on the disclosure within the specifications of the '696, '869, '668, '000, '902, or '790 patents. (Ex. N, Turnbull Invalidity Report, ¶¶ 2761 – 2769).

20.    ██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████

███████████████████████████████████

### D.    Facts Pertaining to IBM's Lack of Enablement Allegations

21.    Dr. Turnbull does not include in his report any understanding, that in order to prove a lack of enablement, the patent challenger must prove by clear and convincing evidence that a person skilled in the art, having read the specification, could not practice the invention without undue experimentation. (Ex. N, Turnbull Invalidity Report, pp. i – ii).

22.    ████████████████████████████████████████████

███████████████████████████████

23.    Dr. Turnbull offers no analysis on whether practicing the claimed inventions of the '696, '869, '668, '000, '902, and '790 patents would require undue experimentation. (Ex. N, Turnbull Invalidity Report, pp. i – vii).

24.    The *Wands* factors are not discussed or analyzed in either IBM's Invalidity Contentions or Dr. Turnbull's Invalidity Report. (Ex. A, IBM's Invalidity Contentions, pp. 305 – 306, 320 - 330; Ex. N, Turnbull Invalidity Report, pp. i – vii).

## IV.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is appropriate when no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When (as here) the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rather, the moving party's initial burden of establishing the absence of genuine issue of material fact "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*.

6

███████████████████████████████████

Once the moving party has demonstrated an absence of material fact, "the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial." *Shum v. Intel Corp.*, 633 F.3d 1067, 1076 (Fed. Cir. 2010). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). If the nonmoving party cannot do so, the Court must grant summary judgment.

### B.    Presumption of Validity

A patent is presumed valid, and an accused infringer must prove any invalidity theory by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238, 2242 (2011). A "moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

### C.    Written Description

The "written description" requirement of § 112 requires that a patent "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharm., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). In other words, "the test for sufficiency [of the written description] is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* The "written description" inquiry is a question of fact upon

7

which the Court's legal conclusion rests. *Id*. Even though compliance with the written description requirement is a question of fact, the issue is "amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).

### D.    Enablement

To prove that a claim is invalid for lack of enablement, a challenger must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without "undue experimentation." *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988). "A patent need not disclose what is well known in the art." *Wands*, 858 F.2d at 735. "A patentee need not describe in the specification every conceivable and possible future embodiment of his invention." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). It is well established that as long as the specification discloses at least one method for making and using the claimed invention that bears a reasonable correlation to the entire scope of the claim, then the enablement requirement of 35 U.S.C. 112, first paragraph is satisfied. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1369 (Fed. Cir. 2014).

## V.    ARGUMENT

### A.    Pardalis is Entitled to Partial Summary Judgment Dismissing IBM's Invalidity Defenses under 35 U.S.C. § 102(f) for Alleged "Incorrect Inventorship"

Pardalis is entitled to summary judgment because IBM's invalidity defenses under 35 U.S.C. § 102(f) concerning alleged incorrect inventorship of the '668, '000, '902 and '790 patents cannot succeed as a matter of law.

As an initial matter, Pardalis has requested Certificates of Correction for the '668, '000, '902 and '790 patents. *See generally* Exs. B, C, D, and E. To date, the United States Patent and Trademark Office ("USPTO") has issued Certificates of Correction for both the '902 and '790

patents under 37 C.F.R. 1.324 and 35 U.S.C. § 256, formally recognizing Ms. Kathleen D. Legako as an inventor of these patents and rectifying any prior errors in inventorship. *See* Ex. F, '902 patent Certificate of Correction; Ex. G, '790 patent Certificate of Correction.[1] By issuing these Certificates, the USPTO resolved any disputed issues of incorrect inventorship, rendering IBM's defenses against the '902 and '790 patents under 35 U.S.C. § 102(f) moot and without merit. Since there is no genuine issue of material fact regarding the validity of the corrected '902 and '790 patents, and IBM cannot meet its burden of proof, summary judgment in favor of Pardalis is appropriate.

Moreover, the Certificates of Correction extend the presumption of validity to the corrected patents. *See Cassidian Communs., Inc. v. Microdata Gis, Inc.*, No. 2:12-CV-162-JRG, 2015 U.S. Dist. LEXIS 51331 at *7 (E.D. Tex. April 20, 2015). This places the burden on IBM to present "'clear and convincing, corroborated evidence' that [each] correction was improper." *Id*. (citing *C.R. Bard, Inc. v. M3 Sys., Inc*., 157 F.3d 1340, 1352 (Fed. Cir. 1998)). Despite this requirement, IBM has failed to present any such evidence. *See Viskase Corp. v. Am. Nat. Can Co*., 261 F.3d 1316, 1329 (Fed. Cir. 2001) ("Absent fraud or deceptive intent, the correction of inventorship does not affect the validity or enforceability of the patent for the period before the correction.").

Finally, IBM's allegations of incorrect inventorship fail to take into account the pending corrections for both the '668 and '000 patents under 37 C.F.R. 1.324 and 35 U.S.C. § 256(a), which resolves these issues. It is well established "that that Congress intended § 256 to broadly allow the correction of errors in inventorship, and if correctable, such errors should not alone bring about invalidity." *Cassidian Communs., Inc.*, 2015 U.S. Dist. LEXIS 51331 at *12; *see also Pannu v.*

---

[1] Moreover, the USPTO also issued a Certificate of Correction for the U.S. Patent No. 9,690,765, which was previously an asserted patent in this case. Pardalis's final election of claims removed the claims of the '765 patent from the case.

███████████████████

*Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998). Moreover, as attested to in each of Pardalis's requests, the inventorship error occurred without any deceptive intent. *See, e.g.,* Ex. B, '668 patent Request, PARDALIS_0043423 at -33, -35; Ex. C, '000 patent Request, PARDALIS_0043214 at -24, -27; Ex. D, '902 patent Request, PARDALIS_0043004 at -16, -17; Ex. E, '790 patent Request, PARDALIS_0042788 at -799, -800. Indeed, Pardalis's requests are substantively identical for the '668 and '000 patents as the requests that have already been approved by the USPTO for the '902 and '790 patents, as the latter two patents share a specification with the former two, and all of them claim priority in a direct line to Pardalis's '869 patent, which also unquestionably names Ms. Legako as a co-inventor inventor. There is no plausible reason, benefit, or motivation for any deceptive intent in failing to name Ms. Legako as an inventor of the '668 and '000 patents. Nor has IBM presented any evidence to suggest otherwise.

For these reasons, IBM has not proven, and cannot prove by clear and convincing evidence that the '668, '000, '902 and '790 patents are invalid under 35 U.S.C. § 102(f) for incorrect inventorship. As such, summary judgment is appropriate.

### B. Pardalis is Entitled to Partial Summary Judgment Dismissing IBM's Invalidity Defenses Based on 35 U.S.C. § 112 for Lack of Written Description Regarding Claims with "Informational Object" and "Data Element" Limitations

Pardalis is entitled to summary judgment because IBM's invalidity defenses under 35 U.S.C. § 112 regarding the written description requirements for the "informational object" and "data elements" limitations are fundamentally flawed. Indeed, these flaws undercut the basis of IBM's invalidity defense, warranting summary judgment in favor of Pardalis.

IBM's invalidity defenses, alleging that the Asserted Claims lack written description under 35 U.S.C. § 112 for the "informational object" and "data elements" limitations, are set forth in Dr. Turnbull's expert report. *See* Ex. N (Turnbull Invalidity Report), ¶¶ 2761 – 2769. ███████████

10

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████ █

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████ However, this misinterprets the law.

In determining whether claims are valid as adequately described under 35 U.S.C. § 112, the issue is <u>not</u> whether the specifications adequately describe the accused products. *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306 (Fed. Cir. 2003); *Tyco Healthcare Group LP v. Biolitec, Inc.*, No. C-08-3129, 2010 U.S. Dist. LEXIS 79560 at *13 (N.D. Cal. Aug. 3, 2010) ("[F]or purposes of the written description requirement, the issue is not whether a specification provides an adequate description of an accused product, but, rather, whether the specification provides an adequate description of the claimed invention."); *Inline Connection Corp. v. Earthlink, Inc.*, 684 F. Supp. 2d 496, 528 (D. Del. 2010). Indeed, the Federal Circuit has repeatedly held that, in assessing written description, the relevant inquiry is "an objective inquiry into the four corners of the specification," thereby rendering any assessment of the written description against an accused product irrelevant. *See, e.g.*, *Centocor Ortho Biotech, Inc. v. Abbott Laboratories*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) *cert. denied*, 132 S. Ct. 1542, 182 L. Ed. 2d 162 (2012) ("Assessing such 'possession as shown in the disclosure' requires 'an objective inquiry into the four corners of the specification.'"). Consequently, IBM's purported shortcomings of the Asserted Patents' specifications are insufficient, as a matter of law, to demonstrate a lack of written description under § 112.

█

Conversely, the pivotal inquiry focuses on whether the disclosure conveys with reasonable clarity to those skilled in the art that the inventor was in possession of the invention at the time the application was filed. *Purdue Pharma, et al. v. Faulding Inc., et al.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (quoting, *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)). Despite this, IBM failed to provide any expert testimony regarding what a person of ordinary skill in the art would have understood based on the disclosure within the specifications. Instead, IBM's evidence comprises selective excerpts from depositions of two inventors—Mr. Holcombe and Ms. Legako. *See* Ex. N (Turnbull Invalidity Report), ¶¶ 2756, 2766, 2769. However, the Federal Circuit has typically only relied on inventor testimony when the inventor testifies as to objective facts as one of ordinary skill in the art, instead of disclosing subjective knowledge as "the inventor" of the patent. *See, e.g., Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858 (Fed. Cir. 1993); *In re Haves Microcomputer Prods., Inc. Patent Litig.*, 982 F.2d 1527 (Fed. Cir. 1992). Such circumstances do not apply here, as a cursory review of the cited excerpts demonstrates that both inventors were merely providing subjective knowledge. *See, e.g.,* Ex. P (Holcombe Dep. Tr.) 53:20 – 54:7; 69:22 – 73:4; 91:10 – 16; Ex. Q (Legako Dep. Tr.) 42:5 – 19. Moreover, IBM's reliance on selective inventor testimony is further hindered by its attempt to challenge the written description of the Asserted Patents by attacking the separate areas of expertise of the individual inventors, contrary to the law of joint inventorship.

Finally, to satisfy the written description requirement, all that is required is that the patent specification describe the invention in such a way that it is understandable to one of ordinary skill in the art. *Pozen, Inc. v. Par Pharm.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012). Neither examples nor actual reduction to practice are necessary. *Streck, Inc. v. R&D Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012). Pardalis's expert, Dr. Garlick, has opined that—from the viewpoint of one of ordinary

12

skill in the art—there is more than adequate written description support for the asserted claims of the '696, 869, '668, '000, '902, '790 patents, concerning these limitations. *See, e.g.*, Ex. O (Garlick Report), ¶¶ 1021 – 1030; *see also id.* at ¶¶ 65 – 76, 78 – 101, 103 – 115, 117 – 120. Tellingly, IBM failed to provide any expert testimony to contest these opinions. *But see Elcommerce.com, Inc. v. SAP AG, et al.*, 745 F.3d 490, 506 (Fed. Cir. 2014) ("Findings as to what is known, what is understood, and what is sufficient, must be based on evidence. Without evidence, ordinarily neither the district court nor this court can decide whether, for a specific function, the description in the specification is adequate from the viewpoint of a person ordinary skill in the field of the invention."). Consequently, IBM lacks a substantive basis to sustain this defense.

For these reasons, IBM has not proven, and cannot prove that the '696, 869, '668, '000, '902, '790 patents fail the written description requirement with respect to the "informational object" and "data elements" limitations by clear and convincing evidence. As such, summary judgment is appropriate.

### C.  IBM's Lack of Enablement Defenses Are Inadequate as a Matter of Law

Pardalis is entitled to summary judgment because IBM's invalidity defenses under 35 U.S.C. § 112, concerning alleged lack of enablement, cannot succeed as a matter of law. The appropriate standard for enablement assesses whether a person of ordinary skill in the art ("POSITA") "after reading the specification, could practice the claimed invention without undue experimentation." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008); *see also Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014). However, Dr. Turnbull fails to provide any analysis for his opinion regarding lack of enablement, much less an assessment of whether a POSITA would be able to practice the claimed invention after reading the specification as mandated by this standard. *Compare* Ex. N (Turnbull Invalidity Report), ¶ 4 *with* ¶¶ 2754 – 2816. This deficiency is fatal to IBM's enablement defense. *See e.g., Alcon Research*

13

*Ltd. v. Barr Labs., Inc.,* 745 F.3d 1180, 1188 (Fed. Cir. 2014); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) (concluding that conclusory expert assertions cannot raise triable issues of material fact on summary judgment); *Inline Connection Corp.*, 684 F. Supp. 2d at 526-27 (holding that the patents-in-suit were enabled where there "was no testimony concerning the amount of experimentation required to practice the claimed inventions."); *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998) ("[I]t is imperative when attempting to prove lack of enablement to show that one of ordinary skill in the art would be unable to [practice] the claimed invention without undue experimentation."); *Chiron Corp. v. Abbott Labs.*, No. C-93-4280, 1996 U.S. Dist. LEXIS 4802 at *32 (N.D. Cal. Apr. 23, 1996) (where defendant's evidence of non-enablement was "lacking in detail, speculative and conclusory," it was found to be "a far cry from what it needs to establish the nonenablement defenses by clear and convincing evidence."). Thus, IBM is unable to establish an essential element to prove a lack of enablement and, summary judgment is warranted for this reason alone. *See Celotex,* 477 U.S. at 322-23.

Moreover, any opinions from Dr. Turnbull's concerning lack of written description are irrelevant to the question of enablement. *See, e.g.,* Ex. N (Turnbull Invalidity Report), ¶¶ 2754 – 2816. It is black-letter law that the requirements of § 112 delineate separate and distinct standards for written description and enablement. *See Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1344-52 (Fed. Cir. 2010) (*en banc*). The standard for enablement is separate from that of written description and concerns whether the specification "enables one skilled in the art to make and use the claimed invention . . . [without] unduly extensive [experimentation]." *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1384 (Fed. Cir. 1986). Nowhere does Dr.

14

████████████████████████████████

Turnbull endeavor to apply this standard to any portion of the Asserted Claims, and IBM fails to provide any other supporting evidence.

For these reasons, IBM has not proven, and cannot prove that the '696, 869, '668, '000, '902, '790 patents are invalid for lack of enablement by clear and convincing evidence. As such, summary judgment is appropriate.

## VI.   CONCLUSION

For at least the reasons stated above, Pardalis respectfully requests that this Court grant partial summary judgment of validity as to IBM's invalidity defenses (i) of incorrect inventorship under 35 U.S.C. § 102(f) for the '668, '000, '902, and '790 patents, (ii) of a lack of written description concerning the "informational object" and "data element" limitations under 35 U.S.C. § 112, and (iii) of a lack of enablement by the Asserted Patents, also under 35 U.S.C. § 112.

15

███████████████████████████████

Dated: May 28, 2024

Respectfully Submitted,

/s/ Justin B. Kimble

**Justin B. Kimble** (Lead Counsel)
Texas Bar No. 24036909
**Patrick J. Conroy**
Texas Bar No. 24012448
**Nathan L. Levenson**
Texas Bar No. 24097992
**NELSON BUMGARDNER CONROY PC**
2727 N. Harwood Street, Suite 250
Dallas, Texas 75201
Tel: (214) 446-4950
justin@nelbum.com
pat@nelbum.com
nathan@nelbum.com

**Janson H. Westmoreland**
Texas Bar No. 24131755
**NELSON BUMGARDNER CONROY PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Tel: (817) 377-9111
janson@nelbum.com

**C. Austin Ginnings**
New York Bar No. 4986691
**NELSON BUMGARDNER CONROY PC**
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
Tel: (708) 675-1583
austin@nelbum.com

*Attorneys for Plaintiff*
*Pardalis Technology Licensing, L.L.C.*

16

████████████████████████████████

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served via electronic mail upon all counsel of record on May 28, 2024.

*/s/ Justin B. Kimble*
Justin B. Kimble

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5(a)(7)(B), I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Justin B. Kimble*
Justin B. Kimble
