**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| Pardalis TECHNOLOGY LICENSING, L.L.C., | Civil Action No. 2:22-cv-00452-JRG-RSP |
| Plaintiff, | ▐▐▐▐▐▐▐▐▐▐▐ |
| v. | Jury Trial Demanded |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Defendant. | |

**PLAINTIFF PARDALIS TECHNOLOGY LICENSING, L.L.C.'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-SUIT KNOWLEDGE, NO INDUCED INFRINGEMENT, LIMITATION OF DAMAGES, AND NO WILLFUL INFRINGEMENT**

**<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ............................... 1

III. RESPONSE TO IBM'S STATEMENT "UNDISPUTED" MATERIAL FACTS ................... 1

IV. LEGAL STANDARD ........................................................................................... 3

V.  ARGUMENT ..................................................................................................... 4

   A.  Triable Issues of Material Fact Preclude Summary Judgment on Pre-Suit Knowledge ..... 4

   B.  A Genuine Material Fact Issue Exists as to IBM's Intent to Induce Infringement ............. 9

   C.  Triable Issues of Material Fact Concerning Pardalis's Compliance with the Marking Statute Preclude Summary Judgment on Pre-Suit Damages ............................................. 12

      1.  The Marking Statute Does Not Apply to Pardalis's Services ....................................... 12

      2.  Even if There Was a Duty to Mark, a Genuine Material Fact Exists as to Pardalis's Compliance with the Marking Statute .......................................................... 14

   D.  A Genuine Material Fact Issue Exists as to IBM's Willful Infringement ......................... 16

VI. CONCLUSION ................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*3D Sys. v. Formlabs, Inc.*,
No. 13-cv-7973, 2014 U.S. Dist. LEXIS 65127 (S.D.N.Y. May 9, 2014) ................................. 5

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
No. 06-11109-RWZ, 2008 U.S. Dist. LEXIS 18636 (D. Mass. Feb. 8, 2008) ......................... 13

*Allen Organ Co. v. Kimball Int'l, Inc.*,
839 F.2d 1556 (Fed. Cir. 1988) ............................................................... 11

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993) ................................................................ 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................... 3

*Batiste v. City of Beaumont*,
No. 1:05-cv-109, 2006 U.S. Dist. LEXIS 21865 (E.D. Tex. Mar. 10, 2006) ........................... 11

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) ........................................................................ 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................... 3

*Denneroll Holdings Pty Ltd. v. Chirodesign Group, LLC*,
No. 4:15-cv-740, 2016 U.S. Dist. LEXIS 21977 (S.D. Tex. Feb. 23, 2016) ........................... 15

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
909 F.3d 398 (Fed. Cir. 2018) ............................................................... 4

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
394 F.3d 1368 (Fed. Cir. 2005) .............................................................. 9

*Global Traffic Techs., LLC v. Morgan*,
620 Fed. Appx. 895 (Fed. Cir. 2015) ......................................................... 14

*Global-Tech Appliances, Inc. v. SEB S.A.*
563 U.S. 754 (2011) ...................................................................... 8, 9

*Hunt v. Cromartie*,
526 U.S. 541 (1999) ........................................................................ 11

*Kewazinga Corp. v. Microsoft Corp.*,
  558 F. Supp. 3d 90 (S.D.N.Y. 2021) ........................................................................... 6

*Limelight Networks, Inc. v. XO Communs., LLC*,
  241 F. Supp. 3d 599 (E.D. Va. March 13, 2017) ................................................. 12, 13

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ................................................................................. 9

*Matsushita Elec. Indus. Co. v. Zenith Radio*
  475 U.S. 574. 587 (1986) ........................................................................................... 4

*MEMC Elec. Mat'ls, Inc. v. Mitsubishi Mat'ls Silicon Corp.*,
  420 F.3d 1369 (Fed. Cir. 2005) ............................................................................... 10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ................................................................................................. 10

*Minton v. NASD*,
  336 F.3d 1373 (Fed. Cir. 2003) ................................................................................. 3

*Mobile Equity Corp. v. Walmart Inc.*,
  No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 162338 (E.D. Tex. Sept. 8, 2022) ........ 7

*PalTalk Holdings, Inc. v. Microsoft Corp.*,
  No. 2:06-CV-367, 2009 U.S. Dist. LEXIS 131087 (E.D. Tex. Feb. 2, 2009) ........................... 6

*Ricoh Co., Ltd. v. Quanta Computer Inc.*,
  550 F.3d 1325 (Fed. Cir. 2008) ............................................................................... 10

*Sealant Sys. Int'l v. TEK Global*,
  No. 11-00774 PSG, 2012 U.S. Dist. LEXIS 752 (N.D. Cal. Jan. 4, 2012) ................................. 6

*Sentry Prot. Products Prod., Inc., v. Eagle Mfg. Co.*,
  400 F.3d 910, 918 (Fed. Cir. 2005) .......................................................................... 15

*Smart Path Connections, LLC v. Nokia of Am. Corp.*,
  No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 57998 (E.D. Tex. Mar. 6, 2024) ....... 9, 12

*Staton Techiya LLC v. Samsung Elecs. Co., Ltd..*,
  No. 2:21-cv-00413-JRG-RSP, 2023 U.S. Dist. LEXIS 217096 (E.D. Tex. Nov. 5, 2023) ....... 13

*SynQor, Inc. v. Artesyn Techs., Inc.*,
  No. 2:07-cv-497, 2011 U.S. Dist. LEXIS 91668 (E.D. Tex. Aug.17, 2011) ............................... 4

*United States v. Diebold*,
   369 U.S. 654 (1962) ................................................................................................ 4

*VLSI Tech. LLC v. Intel Corp.*,
   No. 18-0966-CFC, 2020 U.S. Dist. LEXIS 112901 (D. Del. June 26, 2020) ............................ 8

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
   824 F.3d 1344 (Fed. Cir. 2016) .............................................................................. 9

*Water Techs. Corp. v. Calco, Ltd.*,
   850 F.2d 660 (Fed. Cir. 1988) .............................................................................. 10

## **Statutes**

35 U.S.C. § 287(a) ...................................................................................................... 12

## I.    INTRODUCTION

Plaintiff Pardalis Technology Licensing, L.L.C. ("Pardalis") hereby opposes Defendant International Business Machines Corporations's ("IBM") motion for summary judgment of no pre-suit knowledge, no induced infringement, limitation of damages, and no willful infringement. *See, generally*, Dkt. No. 132 ("Motion"). For the reasons below, IBM has not established that summary judgment in its favor is proper as to any of the grounds that it raises.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

1.    Whether IBM has shown itself to be entitled to summary judgment on no pre-suit knowledge when the factual record contains genuine issue of material facts.

2.    Whether IBM has shown itself to be entitled to summary judgment on no induced infringement when the factual record contains a genuine issue of material fact.

3.    Whether IBM has shown itself to be entitled to summary judgment on no damages for the '696 and '869 patents when the factual record contains a genuine issue of material fact.

4.    Whether IBM has shown itself to be entitled to summary judgment on no willful infringement when the factual record contains a genuine issue of material fact.

## III.    RESPONSE TO IBM'S STATEMENT "UNDISPUTED" MATERIAL FACTS

**Response to SUF Nos. 1-6:** Undisputed.

**Response to SUF No. 7:** Disputed. In its Amended Complaint (Dkt. No. 33) and in its Response to IBM's Interrogatory No. 9, Pardalis alleges pre-suit knowledge of the Asserted Patents based on 1) communications between IBM's attorney, Scott Stinebruner, then of Wood, Herron & Evans, LLP, Cincinnati, OH, and Steve Holcombe, in 2006 as well as communications from Steve Holcombe to Dr. Dean Martin, then VP IBM Almaden Research Center, and Dr. Pat Selinger, then VP Data Management Architecture & Technology, IBM Silicon Valley Lab, in November 2006; 2) IBM's conduct before the United States Patent and Trademark Office ("USPTO") where U.S.

Patent Application Publication No. US2007/0061360 A1 (the publication of the '668 Patent) was cited by the Examiner during the prosecution of U.S. Patent Application Publication No. 2012/0150925 A1, entitled "Proactive Method for Improved Reliability for Sustained Persistence of Immutable Files in Storage Clouds" and assigned to IBM; 3) constructive knowledge given Pardalis's compliance with 35 U.S.C. § 287 and 4) willful blindness.

**Response to SUF No. 8:** Disputed. In response to IBM's Interrogatory No. 9, Pardalis states that "information responsive to this interrogatory may be obtained by reviewing the following documents: PARDALIS0005814 – PARDALIS0006361." Dkt. No. 132.11 (Ex. K) at 3-4. Information contained within these documents produced by Pardalis in this case provide for reasonable allegations that the communications, citation, and marking show pre-suit knowledge of patent infringement. *See, e.g.,* Dkt. No. 132.15 (Ex. O); Dkt. No. 132.16 (Ex. P); Dkt. No. 132.17 (Ex. Q). Information within these documents also provide for reasonable allegations of specific facts relating to willful blindness. *See, e.g., id.*

**Response to SUF No. 9-13:** Undisputed.

**Response to SUF No. 14:** Disputed. The physical Common Point Authoring ("CPA") System was never offered for sale or sold. Ex. A (Holcombe Dep. Tr.), at 387:10 - 388:6.

**Response to SUF No. 15-17:** Undisputed.

**Response to SUF No. 18:** Disputed. Pardalis agrees that the document cited by IBM contains the quoted portion. But Pardalis disputes this statement to the extent it is meant to assert that the quoted portion is Pardalis's complete response to IBM's Interrogatory No. 11 related to marking. *See* Dkt. No. 132.11 (Ex. K) at 12. Pardalis did not make, offer for sale, or sell a physical, tangible article that could be marked as patented.

**Response to SUF No. 19:** Disputed. Pardalis did not make, offer for sale, or sell a physical, tangible article that could be marked as patented. Further, even if there were a physical tangible article to be marked as patented, there was no obligation to mark such an article with patents that have not yet issued. *See* Dkt. No. 132.11 (Ex. K) at 12.

**Response to SUF No. 20:** Disputed. Pardalis did not make, offer for sale, or sell a physical, tangible article that could be marked as patented. Further, even if there were a physical tangible article to be marked as patented, there was no obligation to mark such an article with patents that have not yet issued. *See* Dkt. No. 132.11 (Ex. K) at 12. Notwithstanding, at least Dkt. No. 132.27 (Ex. AA), Dkt. No. 132.28 (Ex. AB), Dkt. No. 132.30 (Ex. AD), Dkt. No. 132.35 (Ex. AI) were each marked.

**Response to SUF No. 21-22:** Undisputed.

**Response to SUF No. 23:** Disputed. There never was complete physical CPA system offered for sale or sold. *See, e.g.*, Ex. A (Holcombe Dep. Tr.), at 387:10-388:6; Ex. B (Mayberry Dep. Tr.), at 54:14-23.

**Response to SUF No. 24-25:** Undisputed.

**Response to SUF No. 26:** Disputed. Pardalis agrees that Mr. Novak's testimony on inducement is found within ¶¶ 1475-1480 of the document cited by IBM. But Pardalis disputes IBM's characterization of Mr. Novak's testimony and the cited evidence in support of his opinions within those paragraphs. *See* Dkt. No. 132.12 (Ex. L), ¶¶ 1475-1480.

**Response to SUF No. 27-28:** Undisputed.

## IV.    LEGAL STANDARD

Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Minton v. NASD*, 336 F.3d 1373,

1375-76 (Fed. Cir. 2003) (applying Fifth Circuit standards and citing Fed. R. Civ. P. 56(c)). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuinely disputed when "the evidence [with respect to the material fact in dispute] 'is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* The burden is on the moving party to show through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574. 587 (1986) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)).

## V.    ARGUMENT

### A.    Triable Issues of Material Fact Preclude Summary Judgment on Pre-Suit Knowledge

As an initial matter, IBM's arguments lack merit as its demand for direct evidence of actual knowledge has been rejected by the Federal Circuit. *See Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 408 (Fed. Cir. 2018). For example, IBM argues (without supporting authority) that Pardalis cannot show pre-suit knowledge of the '696 patent because Pardalis has not provided evidence that Mr. Stinebruner or anyone at IBM received the produced correspondence before the lawsuit was filed. *See* Motion at 9. But this argument misstates the evidentiary requirements for a claim of indirect infringement, as "knowledge of the patents may be proven by either direct or circumstantial evidence." *SynQor, Inc. v. Artesyn Techs., Inc.*, No.

2:07-cv-497, 2011 U.S. Dist. LEXIS 91668, at *3 (E.D. Tex. Aug.17, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir. 2013).

Contrary to IBM's claims, sufficient evidence exists for a reasonable jury to find actual pre-suit knowledge of the '696 patent. On May 5, 2005, an agent of Pardalis, Mr. Cohen, submitted a venture capital request to IBM detailing Pardalis's CPA system and its capabilities. *See* Ex. C (IBM-PAR_00795373) at -373, -375, 377-379. In this request regarding Pardalis's CPA system, Pardalis was ████████████████████████████████████████

████████████████████████████████████████████

████████████████████ *Id*. at -375. This request further identified the Pardalis website (www.pardalis.com). *Id*. at -379.

Subsequently in 2006, Pardalis sent a correspondence to IBM's attorney, Mr. Stinebruner, then of Wood, Herron & Evans LLP in Cincinnati, Ohio. *See* Dkt. No. 132.17 (Ex. Q); *see also* Ex. A (Holcombe Dep. Tr.), at 307:23-308:4. This correspondence discussed Pardalis's technology and identified both the '696 patent and the application that led to the subsequent '869 patent. *Id*.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

In November 2006, Pardalis also sent correspondences to at least two IBM employees, namely Dr. Dean Martin, then VP IBM Almaden Research Center, and Dr. Pat Selinger, then VP Data Management Architecture & Technology, IBM Silicon Valley Lab. *See* Dkt. No. 132.15 (Ex. O); Dkt. No. 132.16 (Ex. P); *see also* Ex. A (Holcombe Dep. Tr.), at 310:18-311:4. These correspondences not only alerted both recipients that Pardalis's technology was patented, but also

further discussed Pardalis's patented methods.[1] *Id*. During this time, Pardalis consistently marked its website with at least the '696 and '869 patents after their issuance in 2003 and 2006, respectively. *See* Ex. D (Pardalis Website Screenshots), at 1-5; *see also 3D Sys. v. Formlabs, Inc*., No. 13-cv-7973, 2014 U.S. Dist. LEXIS 65127, *9 (S.D.N.Y. May 9, 2014) (marking can support inference that a defendant had knowledge of a patent). At a minimum, these facts create a genuine issue concerning IBM's knowledge of the '696 Patent.

Moreover, a reasonable jury could find from the totality of the circumstances that IBM also had pre-suit knowledge of the remaining Asserted Patents. As previously discussed, the correspondence sent to IBM's counsel identified the '696 patent (the parent of the Asserted Patents) and the application that led to the subsequent '869 patent (a continuation-in-part of the '696 patent). *See* Dkt. No. 132.17 (Ex. Q); *see also Kewazinga Corp. v. Microsoft Corp*., 558 F. Supp. 3d 90, 119-21 (S.D.N.Y. 2021) (holding that "evidence of pre-suit knowledge of a patent can be circumstantial and a reasonable factfinder could infer that [accused infringer] was aware of [a related patent] based on its actual knowledge of patents in the same family"). In addition, the publication of the '668 Patent was cited by the Examiner during the prosecution of IBM's patent application. *See* Dkt. No. 132.11 (Ex. K), at 3; *see also Sealant Sys. Int'l v. TEK Global*, Nos. 11-00774 PSG, 11-1649 PSG, 2012 U.S. Dist. LEXIS 752, at *9-10 (N.D. Cal. Jan. 4, 2012) (holding that defendant had pre-suit knowledge of patent when examiner referenced it in prosecution of defendant's patent); *PalTalk Holdings, Inc. v. Microsoft Corp.*, No. 2:06-CV-367, 2009 U.S. Dist. LEXIS 131087, at *6-7 (E.D. Tex. Feb. 2, 2009) (same). At a minimum, the totality of the

---

[1] While these additional correspondences do not explicitly mention the '696 patent, it is well-established that a patentee is not required to specifically identify patent numbers "in pre-suit materials" to support a claim of pre-suit indirect infringement, as affirmed by this Court. *Mobile Equity Corp. v. Walmart Inc*., No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 162338 at *7 (E.D. Tex. Sept. 8, 2022).

████████████████████████████████

circumstances create a genuine issue of material fact concerning IBM's knowledge of the

remaining Asserted Patents.

Further, sufficient evidence exists for a reasonable jury to find that IBM had knowledge of

its infringement of the Asserted Patents. For example, as discussed above, Mr. Cohen submitted a

venture capital request to IBM detailing Pardalis's CPA system and its capabilities. *See generally*

Ex. C (IBM-PAR_00795373). Additionally, Pardalis sent correspondence to IBM's attorney

identifying at least the '696 patent and further detailing Pardalis's web-based solution, based on

Pardalis's intellectual property, ████████████████████████████████

████████████████████████████████████████

█████████ Dkt. No. 132.17 (Ex. Q). Further communications to IBM provided greater detail

concerning and describing Pardalis's patented methods. *See* Dkt. No. 132.15 (Ex. O); Dkt. No.

132.16 (Ex. P). Years later, after denying Pardalis's request for venture capital and receiving

Pardalis's communications regarding its patented methods, IBM introduced its blockchain

technology employing █████████████████████[2] █████████████████████

████████████████████████████████████████

█████████████████[3]

Notably, this Court has rejected any notion that a patentee must make specific accusations

of infringement "in pre-suit materials" to establish a "claim of pre-suit indirect infringement."

Moreover, any notion that a patentee must make specific accusations of infringement "in pre-suit

materials" to establish a "claim of pre-suit indirect infringement" has also been rejected by this

Court. *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS

---

[2] Dkt. No. 132.17 (Ex. Q).
[3] *See* Ex. C (IBM-PAR_00795373) at -377.

■■■■■■■■■■■■■■■■■■■■■■■■■■■

162338 at *7 (E.D. Tex. Sept. 8, 2022). Put simply, the fact that Pardalis never sent a pre-suit letter to IBM detailing the alleged infringement is not fatal to its claim. Therefore, as detailed by at least Pardalis's *multiple* correspondences to IBM and/or its representatives as well as IBM's subsequent development of blockchain technology incorporating Pardalis's patented technology, a reasonable jury could find that IBM had knowledge of its infringement of the Asserted Patents.

However, even if IBM did not have actual knowledge of its infringement of the Asserted Patents, sufficient evidence exists for a reasonable jury to find that IBM was willfully blind to its infringement of the Asserted Patents. *See VLSI Tech. LLC v. Intel Corp.*, No. 18-0966-CFC, 2020 U.S. Dist. LEXIS 112901, at *4 (D. Del. June 26, 2020). This may be shown by demonstrating "that the defendant (1) subjectively believed that there was a high probability that the induced acts constituted infringement and (2) took deliberate actions to avoid learning of that fact." *Id.* IBM has done so here.

For example, Gennaro Cuomo, former Vice President IBM Blockchain, testified that, as part of launching a new product, ■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■ Ex. E (Cuomo Dep. Tr.) at 56:21-57:11. He further explained that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■ *Id.*, at 58:4-9. Nonetheless, Mr. Cuomo described ■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■ *Id.*, at 59:16-60:1. He would also ■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■ *Id.*, at 60:2-13. Here, Mr. Cuomo's testimony is similar to the

accused infringer's chief technical officer and president's testimony in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770-71 (2011). In *Global-Tech Appliances*, the CEO and President of the accused infringer testified that they "performed 'market research' and 'gathere[ed] information as much as possible." *Id.* In that case, the Supreme Court affirmed the holding that the evidence was "more than sufficient for a jury to find that [the accused infringer] subjectively believed there was a high probability that [the patentee's product] was patented, that [the accused infringer] took deliberate steps to avoid knowing that fact, and that it therefore willfully blinded itself to the infringing nature of [it's] sales." *Id.* Notably, the holding was affirmed despite the fact there was no evidence that the patentee made *any* attempts at communication with the ultimate accused infringer. *See id.*

Here, there is sufficient evidence that IBM subjectively believed that there was a high probability that the induced acts constituted infringement by "tak[ing] deliberate actions to avoid confirming a high probability of wrongdoing." *Global-Tech*, 131 S. Ct. at 2070-71. Indeed, Mr. Cuomo's ████████████████████████████████████████████████████████

███████████████████████████████████████████████ *See Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 2:22-CV-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 57998, at *8 (E.D. Tex. Mar. 6, 2024). Therefore, a reasonable jury could find that IBM was willfully blind to its infringement of the Asserted Patents.

**B.    A Genuine Material Fact Issue Exists as to IBM's Intent to Induce Infringement**

The Court should also deny IBM's motion for summary judgment of a lack of specific intent to induce infringement. IBM contends that an explicit mapping between the inducement evidence and each claim element is necessary, yet it fails to cite any supporting authority for this assertion. *See* Motion at 13-14. In doing so, IBM requires direct evidence of intent to prove induced

infringement. *But see Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) ("[The] requisite intent to induce infringement may be inferred from all of the circumstances."). IBM is simply wrong on both counts. Such a demand improperly disregards the established legal principle that induced infringement can be proven through circumstantial evidence. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

Here, Pardalis has presented sufficient evidence for a reasonable jury to draw the conclusion that IBM intended for its customers and other third parties to infringe the asserted patents. *See, e.g.*, Dkt. No. 132.11 (Pardalis's Interrogatory Responses) at 1-8; Dkt. No. 132.12 (Novak Expert Report) at ¶¶ 1475-1480. As explained by Pardalis's expert, Mr. Novak, IBM intended for its customers and third parties to use the accused features in a manner that directly infringes the asserted patents. *See* Dkt. No. 132.12 at ¶¶ 1477. Mr. Novak detailed how IBM actively encouraged and facilitated infringement through various methods, while providing specific examples for each method. *Id*. at ¶¶ 1476-80. For example, Mr. Novak provided numerous examples illustrating how IBM advertised, promoted, and/or instructed its customers on the infringing use of the Accused Products via its website, instructive materials, instructional videos, trainings, and interactive sessions. *Id*. at ¶ 1478. Indeed, it is well established that "evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." *MEMC Elec. Mat'ls, Inc. v. Mitsubishi Mat'ls Silicon Corp.*, 420 F.3d 1369, 1379-80

(Fed. Cir. 2005) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 936 (2005)); *see also Ricoh Co., Ltd. v. Quanta Computer Inc*., 550 F.3d 1325, 1343 (Fed. Cir. 2008) ("[P]roviding instruction on how to engage in an infringing use show[s] an affirmative intent that the product be used to infringe."). As such, these examples constitute circumstantial evidence sufficient to prove specific intent to induce infringement.

Similarly, Mr. Novak highlighted multiple instances where IBM provided onboarding and support services to its United States customers, assisting them with activities such as testing, coding, using, and deploying blockchain networks in ways that infringe the asserted claims. *See* Dkt. No. 132.12 at ¶ 1479. Additionally, Mr. Novak presented evidence that IBM encouraged consumers to use the Accused Products in an infringing manner by assisting in performing the infringing use ███████████████████████████████████████████ ██████████ for the Accused Products. *Id*. at ¶ 1480. These examples further constitute circumstantial evidence of IBM's specific intent to induce infringement. At a minimum, these facts create a genuine issue concerning IBM's intent to induce infringement, and consequently, summary judgment on this issue should be denied.

Finally, IBM acknowledges that Mr. Novak's report has presented specific examples to support Pardalis's claim of inducement. However, IBM's contention for summary judgment rests solely on its dispute with Mr. Novak's (and Pardalis's) interpretation and characterization of these examples. Such an argument attests to IBM's misunderstanding of the summary judgment standard, as it merely underscores the existence of a material factual dispute between the parties. Both parties have drawn different conclusions from the circumstantial evidence presented. As such, this factual dispute is better-suited for resolution by a jury. *See Batiste v. City of Beaumont*, No. 1:05-CV-109, 2006 U.S. Dist. LEXIS 21865, at *6 (E.D. Tex. Mar. 10, 2006) ("Weighing

parties' conflicting evidence is not appropriate at the summary judgment stage: 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.'") (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 850 (1988) ("Intent is a factual determination particularly within the province of the trier of fact.").

For at least these reasons, IBM's motion for summary judgment on its intent to induce infringement should be denied.

### C.   Triable Issues of Material Fact Concerning Pardalis's Compliance with the Marking Statute Preclude Summary Judgment on Pre-Suit Damages

To prevail on its Motion, IBM is required to prove not only that there is no genuine dispute that the products were "patented articles" within the meaning of 35 U.S.C. § 287(a), but also that there is no genuine dispute that the "patented articles" were made, sold, or offered for sale by [the patentee] or an agent or licensee within the United States and were not marked. *See Smart Path Connections, LLC v. Nokia of Am. Corp.*, No. 2:22-cv-0296, 2024 U.S. Dist. LEXIS 46748 at *6 (E.D. Tex. Feb. 2, 2024). As discussed below, IBM cannot meet its burden on either requirement, thereby precluding summary judgment on pre-suit damages.

#### 1.   The Marking Statute Does Not Apply to Pardalis's Services

IBM seeks summary judgment to preclude pre-suit damages for the '696 patent and the '869 patent on the basis that Pardalis purportedly did not mark its CPA system. *See* Motion at 14-15. However, Pardalis had no duty to mark because it did not make, offer for sale or sell any "tangible item" or "patented article" capable of being marked.[4] *See Limelight Networks, Inc. v. XO Communs., LLC*, 241 F. Supp. 3d 599, 608 (E.D. Va. March 13, 2017) (finding that Content

---

[4] Nor could have Pardalis even marked with the '869 patent until *after* its issuance in November of 2006. A fact that IBM's Motion conveniently ignores.

Delivery Network servers did not contain a tangible item that could be marked and, thus, were not patented articles). By its express provisions, for marking requirements to apply, a "patented article" must exist which can be marked by "fixing thereon" or "fixing to it, or to the package where it is contained" a notice. *See* 35 U.S.C. § 287; *see also Am. Med. Sys., Inc. v. Med. Eng'g Corp*., 6 F.3d 1523,1538-39 (Fed. Cir. 1993) (explaining that Section 287 only applies "to the extent that there is a tangible item to mark by which [public] notice of the asserted method claims can be given."). In contrast, Pardalis provided a server-based *service*, not a physical product. *See* Ex. A (Holcombe Dep. Tr.), at 387:10 - 388:6.[5]

In particular, Pardalis developed a server-based service, via the Internet, which Pardalis believed could eventually enable users to author, maintain, and distribute informational objects containing immutable content across diverse distribution chains, ensuring their integrity and traceability. *See id*. This service provided for the unique identification, authentication, tracking, and secure ownership management of those informational objects. *See id*. Tellingly, IBM fails to cite to any authority or present evidence indicating that such a service amounts to a "patented article" that requires marking under Section 287. *See* Motion at 11-13, 14-15. This failure is unsurprising given the nature of Pardalis's server-based service.

Nor was Pardalis required to mark the discrete server that constituted the CPA system, contrary to IBM's claim. *See Limelight Networks*, 241 F. Supp. 3d 599 at 608; *Akamai Techs., Inc. v. Limelight Networks, Inc*., No. 06-11109-RWZ, 2008 U.S. Dist. LEXIS 18636 at *3 (D. Mass.

---

[5] *See also* Ex. F (PARDALIS_0040486) at -488 ("From October 2005 to March 2006, Pardalis executed a market driven project . . . [in which] Pardalis provided a _Common Point Authoring 'data bank' Internet service_ to the livestock market and to key livestock buyers."); Dkt. No. 132.31 (Ex. AE), at 792-793 ("Pardalis AgriFood Databank The web service manifestation of the Common Point Authoring System for the Internet developed byP ardalis, Inc. to help producers, sellers, packers, and buyers obtain up-to-date, secure information about cattle or other agricultural commodities.").

13

Feb. 8, 2008) (marking requirement does not apply if the patented system consists of software and computers that runs internally and which are not accessible to customers or potential infringers"); *see also Staton Techiya LLC v. Samsung Elecs. Co., Ltd*., No. 2:21-cv-00413-JRG-RSP, 2023 U.S. Dist. LEXIS 217096 at *20 (E.D. Tex. November 5, 2023). Although the patented system included a server, Pardalis did not make, offer for sale or sell this internal component through which its patented system operated. *See* Ex. G (Holcombe Decl.), ¶ 2. Moreover, this component was not accessible to customers. *Id*. at ¶ 3. While customers interacted with a server remotely via the Internet, the server was never physically provided to any customer. *Id*. at ¶ 4. Therefore, marking of this internal component would not fulfill the public notice function intended by Section 287, thereby undermining any argument that they should (or even *could*) have been marked.

For these reasons, Pardalis has not sold any tangible items covered by the asserted claims upon which notice could be affixed, or that were required to be marked under Section 287. Consequently, Pardalis's evidence of record demonstrates that it was not subject to the marking statute, and therefore, Section 287 does not bar pre-suit damages in this case. At minimum, Pardalis disputes whether the facts IBM relies upon sufficiently demonstrate the applicability of the marking statute to Pardalis, thereby establishing at least a question of material fact concerning the existence of a markable article, which precludes a finding in IBM's favor.

### 2.    Even if There Was a Duty to Mark, a Genuine Material Fact Exists as to Pardalis's Compliance with the Marking Statute

Even if the Court determines that Pardalis made, offered for sale, or sold a "patented article" requiring marking, the notice posted on Pardalis's website (www.pardalis.com) substantially complied with the requirements of Section 287. It accomplished the purpose of the patent marking statute which is "to provide constructive notice to the public[.]" *Global Traffic Techs., LLC v. Morgan*, 620 Fed. Appx. 895, 905 (Fed. Cir. 2015) ("Because the purpose of the

marking statute is to provide constructive notice to the public . . . we apply a rule of reason analysis" to determine whether there is substantial compliance.). Notably, marking of the website was not required under Section 287 because it was neither intrinsic to the CPA system nor did Pardalis's customers download any software from it.

Nonetheless, Pardalis's website was consistently marked at least on a dedicated resource page that explicitly identified the '696 patent after its issuance and subsequently included the '869 patent once it was also issued by the Patent Office. *See* Ex. D (Pardalis Website Screenshots), at 1-5; *see also* Dkt. No. 132.28 (Ex. AB) ("A patented new Pardalis technology, called Common Point Authoring™, and Pardalis' Internet-based market make the New Information Marketplace possible . . . . The United States Patent and Trademark Office issued a patent to Pardalis Software for its Common Point Authoring technology on December 30, 2003. The patent is entitled Informational Object Authoring and Distribution System and bears the USPTO Patent Number 6671696."). This resource page also associated the CPA system with the marked patent numbers for both the '696 and '869 patents. *Id.*; *see also* Ex. A (Holcombe Dep. Tr.), at 388:11 – 13. Moreover, Pardalis's website also featured additional white papers and publications marked with the '696 patent and/or '869 patent (after their respective issuance date) and similarly associated the CPA system with these patent numbers. *See* Dkt. No. 132.27 (Ex. AA), at -5776; Dkt. No. 132.29 (Ex. AC), at -789; Dkt. No. 132.30 (Ex. AD), at -5789; *see also* Ex. A (Holcombe Dep. Tr.), at 389:4 – 11. By consistently displaying the patent numbers and their association with the CPA system, Pardalis's website provided the public notice of its patented technology and therefore substantially complied with the marking requirement of section 287(a). *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989) ("The notice requirement is designed for the

information of the public . . . and provides a ready means of discerning the status of the intellectual property embodied in an article of manufacture or design.").

At the very least, whether this constitutes compliance with the marking statute under the circumstances here is a disputed issue of fact, and IBM has failed to meet its burden for summary judgment. *See, e.g.*, *Sentry Prot. Products Prod., Inc., v. Eagle Mfg. Co*., 400 F.3d 910, 918 (Fed. Cir. 2005); *Denneroll Holdings Pty Ltd. v. Chirodesign Group, LLC*, No. 4:15-cv-740, 2016 U.S. Dist. LEXIS 21977 at *28-32 (S.D. Tex. Feb. 23, 2016).

### D.    A Genuine Material Fact Issue Exists as to IBM's Willful Infringement

IBM asserts the Court should grant summary judgment of no pre-suit willfulness on the basis that that Pardalis cannot make the threshold showing that IBM had pre-suit knowledge of the Asserted Patents. *See* Motion at 15. As previously discussed, triable issues exist as to IBM's pre-suit knowledge of the Asserted Patents (*see supra* Section V.A) and, thus, IBM has failed to carry its initial burden to sufficiently identify the lack of evidence in regard to willful infringement. IBM's Motion should, accordingly, be denied.

### VI.    CONCLUSION

For at least the foregoing reasons, Pardalis respectfully requests that IBM's motion for summary judgment be denied.

16

Dated: June 20, 2024

Respectfully Submitted,

*/s/ Justin B. Kimble*
**Justin B. Kimble** (Lead Counsel)
Texas Bar No. 24036909
**Patrick J. Conroy**
Texas Bar No. 24012448
**Nathan L. Levenson**
Texas Bar No. 24097992
**NELSON BUMGARDNER CONROY PC**
2727 N. Harwood Street, Suite 250
Dallas, Texas 75201
Tel: (214) 446-4950
justin@nelbum.com
pat@nelbum.com
nathan@nelbum.com

**Janson H. Westmoreland**
Texas Bar No. 24131755
**NELSON BUMGARDNER CONROY PC**
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Tel: (817) 377-9111
janson@nelbum.com

**C. Austin Ginnings**
New York Bar No. 4986691
**NELSON BUMGARDNER CONROY PC**
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
Tel: (708) 675-1583
austin@nelbum.com

**William E. Davis, III**
Texas Bar No. 24047416
**Ty Wilson**
Texas Bar No. 24106583
**Rudolph "Rudy" Fink IV**
Texas Bar No. 24082997
**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Tel: (903) 230-9090
Fax: (903) 230-9661
bdavis@davisfirm.com
twilson@davisfirm.com

████████████████████████████████

rfink@davisfirm.com

**Attorneys for Plaintiff**
**Pardalis Technology Licensing, L.L.C.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served via electronic

mail upon all counsel of record on June 20, 2024.

*/s/ Justin B. Kimble*
Justin B. Kimble