IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PARDALIS TECHNOLOGY LICENSING, LLC,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　*Defendant*. | §<br>§<br>§<br>§<br>§ Case No. 2:22-cv-0452-JRG-RSP<br>§<br>§<br>§<br>§ |

**MEMORANDUM ORDER**

Before the Court is IBM's Motion to Strike Portions of Mr. Chandler's Expert Report Relating to Damages (Dkt. No. 128.) For the reasons provided below, the Motion is **DENIED**.

**I.      APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining

1

whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

II.    ANALYSIS

    A.  PROJECTIONS BASED DAMAGES OPINION

IBM complains that Mr. Chandler's opinions are unreliable for a list of reasons related to the financial projections he uses. First, IBM contends that Mr. Chandler admitted it was impossible to select a reliable projection from a large set but then does just that without any

explanation. Second, IBM contends the projections used by Mr. Chandler were not available at the time of the hypothetical negotiation but were prepared later. IBM contends that under *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) this is improper. Third, IBM contends Mr. Chandler's use of the Book of Wisdom to determine actual use for purposes of the hypothetical negotiation could not create the over 800% royalty rate that IBM calculates. IBM calculates this based on what it contends are the actual sales that are far lower than the projection used by Mr. Chandler. IBM contends this is particularly egregious as Mr. Chandler contends this would be paid as a running royalty despite little sales. Fourth, IBM argues the projections used by Mr. Chandler include unaccused products without any opinions that the products "essentially function together" with the accused products. Last, IBM contends the running royalty Mr. Chandler proposes is improper since a running royalty is only proper for activities that constitute patent infringement, but Mr. Chandler concedes projections are not acts of infringement.

IBM further contends that Mr. Chandler's use of projections violates the entire market value rule. IBM contends Mr. Chandler improperly used the notion that the patented feature in the accused products is essential to the overall function to implicate the entire market value of the products. IBM further contends that none of Pardalis' experts ever evaluated the individual features of the accused products.

Pardalis responds that Mr. Chandler has used the "analytical approach" to evaluate damages and under this approach the reliance on projections is appropriate. Pardalis contends under this approach actual profits are only indirectly important as the hypothetical negotiation is concerned with anticipated profit. (Opp. at 5 (citing *Aqua Shield v. Inter Pool Cover team*, 774 F.3d 766, 770-72 (Fed. Cir. 2014)).) Pardalis contends the Defendant's projections relied upon by Mr. Chandler are authentic and otherwise admissible and Mr. Chandler relied upon those he

opined were most reliable and relevant.

Pardalis contends that IBM's complaints are largely redundant attacks on the analytical approach generally. Pardalis contends that while actual profits are not determinative for the analytical approach, there is substantial evidence that IBM has profited much more than it contends. Pardalis further contends there is no case law preventing the application of a running royalty to the analytical approach as is done here. Pardalis further contends that Mr. Chandler must assume infringement.

Pardalis further defends its use of the Book of Wisdom. Pardalis contends that while the projections relied upon are dated slightly after the hypothetical negotiation date, it is appropriate to consider them.

As to the inclusion of unaccused products, Pardalis contends there is substantial evidence that the accused product drives the sale of the unaccused products. Pardalis contends it is not required to show a functional relationship for this convoyed sales theory, citing *Powell v. Home Depot U.S.A, Inc.*, 663 F.3d 1221, 1241 (Fed. Cir. 2011).

Pardalis contends that Mr. Chandler also properly apportioned in his damages calculation. Pardalis points to Mr. Chandler's analysis of the *Georgia-Pacific* factors for apportionment. Pardalis further points to its technical expert who opines the claimed technology is fundamental to the accused products. Pardalis contends that in light of this, the claimed invention substantially created the value of the accused product. Therefore, Pardalis contends Mr. Chandler's choice to include all convoyed and ecosystem sales into his royalty base demonstrates his analysis is conservative.

The Court finds IBM has not shown that Mr. Chandler's analytical method analysis should be stricken. First, the Court does not find the particular projection Mr. Chandler selected

4

to warrant exclusion. While there is difficulty in selecting from the large number of projections IBM prepared, the Court believes that such a selection is well within the purview of a damages expert and the jury is fully capable of analyzing Mr. Chandler's selection. Second, later-prepared projections are sufficiently suggestive of what IBM expected its profits to be at the time of the hypothetical negotiation for Mr. Chandler to base his damages opinions on them. This is a standard use for the Book of Wisdom. While IBM has a strong argument that the use of the projections cited by Mr. Chandler should not outweigh what it contends are its actual much smaller sales, the Court will not make that factual finding on this record. While the 800% royalty rate quoted by IBM may prove correct, it requires a prerequisite finding that IBM's preferred sales numbers are correct and Pardalis is incorrect that the much higher projections are more accurate. That is a question for the jury and the Court will not exclude Mr. Chandler's opinions on this basis. Likewise, Mr. Chandler's running royalty opinions need not be stricken. Here, Mr. Chandler contends the projections are evidence of much greater infringing sales than what IBM contends is the truth, not that projections infringe. This is a fact question for the jury to resolve.

Further, the Court is not convinced that Mr. Chandler's inclusion of unaccused products and alleged use of the entire market value rule is improper. "[A] jury may consider not only the benefit to the patentee in licensing the technology, but also the value of the benefit conferred to the infringer by use of the patented technology." *Powell*, 663 F.3d at 1240. That is what Pardalis proposes to present regarding IBM's blockchain line of products. Pardalis contends that IBM benefits through various additional sales based on the use of the claimed invention being a prerequisite for IBM's entire line of blockchain products. Whether Pardalis can prove that is for the parties to explore on cross-examination.

### B. UN-REVIEWED PATENTS

Next, IBM argues that Mr. Chandler's reliance on an HLA rate is inappropriate. IBM

contends it is a cross-license of many patents but does not identify any of the underlying patents. IBM contends that without being able to review the underlying patents, there is no way to determine technological comparability. IBM further complains neither Mr. Chandler nor Mr. Novak analyzed other relied upon IBM licenses.

Pardalis responds that Mr. Novak provides a thorough analysis of the technical comparability of the agreements that Mr. Chandler relies upon.

The Court finds that Mr. Novak performed a sufficient review of the licensed intellectual property to opine that the agreement is technologically comparable to the instant case for Mr. Chandler to rely upon it. Mr. Novak has performed a thorough investigation to identify and then review the licensed intellectual property.

### C.  WORLDWIDE LICENSE

Last, IBM contends Mr. Chandler's opinions that "IBM would have insisted on a worldwide license from Pardalis" and "on a license to non-U.S. Patents," is improper.

Pardalis responds that these statements are taken out of context and only support Mr. Chandler's opinions that certain licenses are comparable.

The Court finds that if properly limited to just Mr. Chandler's comparability analysis, these opinions are proper. Any suggestion that the damages in this case can or should cover infringement of non-U.S. Patents is improper but that is not at issue here.

### III.  CONCLUSION

For the reasons provided above, the Court **DENIES** the motion.

**SIGNED this 9th day of September, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

6