IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PARDALIS TECHNOLOGY LICENSING, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION, <br><br> *Defendant*. | § § § § § § § § § <br><br> Case No. 2:22-cv-00452-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is IBM's Motion to Strike Portions of Mr. Novak's Expert Report (Dkt. No. 131.) For the reasons provided below, the Motion is **DENIED**.

**I.     APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and

other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II.   ANALYSIS

### A. HYPERLEDGER FABRIC INFRINGEMENT THEORIES

IBM contends that Pardalis has introduced a number of new infringement theories in Mr. Novak's expert report that were not included in Pardalis's infringement contentions. IBM contends this failure is particularly inexcusable since the source code at issue, the Hyperledger Fabric source code, is publicly available and Pardalis never attempted to amend its contentions.

First, IBM contends Mr. Novak introduces new theories as to "unique identifier." Pardalis's contentions identified "transaction hash or transaction ID" as examples of how the accused products meet the "unique identifier" limitation, but Mr. Novak's report further identifies "keys" to satisfy the limitation.

Second, IBM makes a similar argument as to "offer data" and "permissions … in the offer data." Mr. Novak identifies "smart contracts," but the contentions never identify "smart contracts" for this limitation, although they did for others.

Third, IBM contends that Pardalis did not disclose a theory of how the accused products "enable members identified in the offer data to access and change data corresponding to data that is contained in the immutable informational object to an extent and for a duration as defined by permissions set by the authorized authoring member in the offer data." IBM specifically identifies "to an extent and for a duration…" as not being disclosed. Mr. Novak's report now identifies a smart contract's "maturity date," "redeem time," and "expiration dates/data."

Fourth, IBM contends Pardalis alleged "authenticating" "within the ordered transaction" "by applying a chaincode-specific validation policy and using a consensus mechanism" in the contentions. Whereas Mr. Novak points to "transaction proposal endorsement methods" prior to the ordering process.

Fifth, the contentions point to "permissioned user" as the claimed "identified accessing

3

member." However, IBM contends Mr. Novak identifies "peers designated within the smart contract" as "identified accessing members."

Sixth, IBM argues that Pardalis identified a "peer node" as the "authoring server" but Mr. Novak identifies "a Certificate Authority and a Membership Service Provider."

Seventh, IBM argues that Pardalis failed to identify how the accused products performed the "mapping" limitations. Pardalis stated in the contentions that "each Accused Product includes a server node that comprises an authoring server that is configured to map the association of the transaction IDs… of each transaction with the block's … hash value." Now, Mr. Novak opines that "a block header … configured to associate the set hash of the block with the transaction IDs of each committed transaction within that block" meets the "mapping" limitation.

Finally, the contentions identified "current state database" for the "memory" limitation. Now, Mr. Novak identifies the "distributed ledger" as meeting the "memory" limitation. IBM argues that Pardalis' contentions identify both of these features but contends they are separate.

IBM argues that each of the identified changes should be stricken under the Court's good cause test for late disclosed infringement theories. IBM contends that since Pardalis never sought to amend its contentions, and the changes Mr. Novak made are based on publicly available documents, there is no justification for the untimely disclosures. IBM argues that once properly stricken, Pardalis still has the infringement theories it originally presented and thus the importance of the new theories is minimal. In contrast, IBM contends that it is materially prejudiced by having such a short time to respond to the new theories. IBM further contends that a continuance is not feasible here.

Pardalis contends that Mr. Novak did not introduce any new theories and at worst only introduces new evidence of theories Pardalis already presented.

4

For the "uniquely identified data elements," Pardalis argues that while the contentions provided the example of unique transaction hash and transaction ID, Pardalis is not restricted to them. Pardalis contends these are "representative examples" that Mr. Novak elaborates upon. Pardalis points to a common figure from the contentions and IBM's rebuttal report that Pardalis used in disclosing the transaction ID but also shows a key.

For "offer data and "permissions … in the offer data," Pardalis argues that IBM failed to articulate a distinction between "smart contracts" and the disclosed permission mapping. Pardalis argues "smart contracts inherently exemplify permission mapping by 'defining the business logic and rules governing transactions on the blockchain network.'" (Opp. at 7 (citing only Novak's report).)

For "extent and for a duration by permissions," Pardalis argues the contentions disclosed this limitation by pointing to "permission mapping." Pardalis argues that Mr. Novak pointing to "maturity date" and "redeem time" is thus only additional evidence.

For "authenticating," Pardalis points to its disclosure of authenticating "each transaction proposal draft data element by verifying the signature of each received transaction proposal and simulating the execution of the input transaction against a smart contract." Pardalis contends IBM focuses on the incorrect disclosure within the contentions and that this disclosure supports Mr. Novak's report.

For "identified accessing member," Pardalis argues a "peer" is a "permissioned user." Pardalis contends Mr. Novak's analysis makes this clear and points to IBM documents that describe a user as an "admin, peer, client, orderer, or member [that] must be associated with the user."

For "authoring server," Pardalis argues its contentions allege infringement based on data

creation via the peer node and Mr. Novak's report only provides greater evidence. Pardalis argues that Mr. Novak's analysis explains how the certificate authority enables the peer node to create data via permissions.

For "mapping," Pardalis argues that while "block header" is not disclosed in the contentions, Mr. Novak's report merely explains how the "block header" is the mapping of "the association of the transaction IDs [unique identifiers] of each transaction with the block's [immutable object] hash value [unique identifiers]." Pardalis argues that this merely provides evidence and detail for the theories disclosed by the contentions.

For "memory," Pardalis argues its contentions disclosed the distributed ledger/the channel's blockchain in addition to the current state database. Pardalis points to the contentions providing "each peer appends the block to the channel's chain, and for each valid transaction the write sets are committed to current state database."

Pardalis further argues that IBM has not demonstrated that it has been prejudiced by Mr. Novak's report. Pardalis contends IBM has not shown prejudice since it made no showing of what it might have done if Pardalis had disclosed these particular explanations of infringement sooner. Pardalis also faults IBM as having prepared an expert report responding to Mr. Novak and not having moved for relief earlier.

The Court finds that Defendant has failed to demonstrate that Plaintiff is presenting new theories of infringement.  By focusing on the individual elements within each claim, without regard to the overall theory of infringement by the accused products, and by trying to hold the expert to the evidence cited in the contentions, Defendant misses the continuity in the overall theory.  Striking the expert's opinions on those individual elements at this late stage would cause great prejudice to Plaintiff, while Defendant has not made a convincing showing of prejudice to

its defense, despite taking the deposition of Mr. Novak and producing its own rebuttal expert reports.

## B.  WORLD WIRE INFRINGEMENT THEORIES

IBM also contends that all Mr. Novak's theories regarding the World Wire product should be stricken. IBM contends there is no dispute that Pardalis's contentions only identified Hyperledger Fabric functionality for World Wire but World Wire does not use the Hyperledger Fabric code base. IBM contends Pardalis knew of this before fact discovery but never sought to amend its contentions. Instead, IBM contends that Mr. Novak's report asserts new infringement theories based on the Stellar Blockchain Protocol code base that is not found in the contentions.

IBM further contends there is no importance to Pardalis's infringement theory because World Wire was never launched. However, IBM contends it is prejudiced for the same reason as above, that it did not have adequate time to prepare a defense.

Pardalis counters that the core functionalities of Hyperledger Fabric and World Wire fundamentally overlap. Pardalis argues both are permissioned blockchains that employ authorization mechanisms to allow certain users to perform certain actions on their respective blockchain networks. Pardalis contends that it disclosed its theory of infringement for World Wire and it merely points to entirely different source code as evidence.

The Court finds that Defendant has not established that Mr. Novak's report presents new theories of infringement as to World Wire.  It is clear that the evidence that Mr. Novak offers regarding Stellar Blockchain Protocol is not in the contentions, but it is not new to Defendant, and Defendant has not shown that it functions in a materially different way from the Hyperledger Fabric used to illustrate the infringement theory in the contentions.  Furthermore, if Defendant's argument about the lack of importance of World Wire is correct, then there would be no

significant prejudice even if the theory of infringement were new.

### III. CONCLUSION

For the reasons provided above, the motion is **DENIED**.

**SIGNED this 12th day of September, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE